OPINION
PER CURIAM.
William F. Davis, III, a Delaware inmate, appeals from the District Court’s final judgment in this pro se action under 42 U.S.C. § 1983. For the reasons that follow, we will summarily affirm.
I.
Davis filed this suit in the United States District Court for the District of Delaware asserting violations of his Eighth Amendment rights while incarcerated on the mental health tier, or “ID Pod,” at the Howard R. Young Correctional Institution (“HRYCI”). In May 2004, an inmate on the same unit, Brian Casey, pushed or shoved Davis in the face on two occasions during basketball games played with numerous other inmates in the yard. Davis asserts that two Corrections Officers witnessed these incidents but failed to report them and took no action against Casey. Davis alleges that he had on several occasions told defendant Deborah Muscarella, his counselor on the mental health tier, that Casey had been falsely calling Davis a “child molester.” On May 31, 2004, about two weeks after the basketball shoving incidents, Casey and Davis were in the dining hall waiting in the breakfast line for second servings. Casey tried to get ahead of Davis in line and once again called Davis a child molester. After the two argued, Davis turned away, at which time Casey punched Davis in the face, fracturing his jaw. In this suit, Davis claims that certain of the named defendants failed to protect him from Casey’s assault, and that certain defendants were indifferent to his medical needs by delaying treatment for his broken jaw.
The District Court granted a motion to dismiss filed by defendant First Correctional Medical (“FCM”), explaining that Davis never mentions FCM in his complaint or amended complaint, and that there is no allegation even suggesting that FCM violated Davis’s rights. The District Court also dismissed defendants Dr. Boston and Brian Casey (the alleged inmate assailant) because Davis failed to respond to an order to show cause as to why these *605 defendants should not be dismissed for failure to provide information to allow timely service of process.
Defendants Williams, Davies, Emig, and Mays [1] filed a motion for summary judgment, in which defendant Way joined. The District Court entered summary judgment in favor of these defendants, holding as follows: (i) claims against these prison officials in their official capacities are barred by Eleventh Amendment immunity; (ii) Warden Williams was not personally involved in the alleged wrongs and cannot be held liable under § 1983 on a theory of respondeat superior; (iii) Davies and Mays, the Corrections Officers who allegedly witnessed the basketball shoving incidents in the yard, cannot be said to have known of or disregarded an excessive risk to Davis’s safety; (iv) Davis fails to show that any defendant, including Nurse Jeremy[2] and Corrections Officer Way, acted with deliberate indifference based on the eleven-day gap between the date of injury and the date surgery was performed to repair his broken jaw; and (v) the claim against Emig, a Captain/Facility Investigator charged with investigating serious incidents at HRYCI, for allegedly failing to ask the Attorney General to prosecute Casey fails given the absence of a duty to seek prosecution of an inmate who injures a fellow inmate. The District Court granted Davis’s motion for leave to file an amended complaint against the lone remaining defendant, Musearella.
Rather than amend, Davis moved for summary judgment on his failure to protect claim. Musearella also moved for summary judgment. The District Court granted Muscarella’s motion, concluding that her alleged failure to protect Davis amounts, at most, to negligence, not a deliberate indifference to a serious risk to Davis’s safety. Davis timely filed this appeal.
II.
We have appellate jurisdiction under 28 U.S.C. § 1291. Our review is plenary of the District Court’s orders entering summary judgment. See Fed. Home Loan Mortgage Corp. v. Scottsdale Ins. Co., 316 F.3d 431, 443 (3d Cir.2003). We view the underlying facts, and all reasonable inferences therefrom, in a light most favorable to the non-movant. Fasold v. Justice, 409 F.3d 178, 180 (3d Cir.2005). After a careful review of the record, we will summarily affirm the District Court’s judgment in accordance -with Third Circuit Internal Operating Procedure Chapter 10.6.[3]
III.
a. Failure-to-protect claim
As the District Court fully explained, “[a] prison official’s deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment.” Farmer v. Brennan, 511 U.S. 825, 828, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). “Deliberate indifference can be shown when a prison official knows of and disregards an excessive risk to inmate health or safety.” Hamilton v. Leavy, 117 F.3d 742, 747 (3d Cir.1997) (quotation marks omitted). “[T]o survive summary judgment on an Eighth Amendment claim asserted under 42 U.S.C. § 1983, a plaintiff is required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the de *606 fendants’ deliberate indifference to that risk; and (3) causation.” Id. at 746.
Davis failed to produce sufficient evidence to survive summary judgment on his claims that Mays, Davies, and Muscarella acted with deliberate indifference to his safety. Davis alleges that Mays supervised the first basketball game in which Casey shoved Davis’s face, and that Davies supervised the second game. Davis’s claims against these two defendants are based on their having witnessed the alleged shoving incidents. Davis concedes that both basketball games were aggressively played by all involved, and Davis himself considered the pushing incident in the first game to be inconsequential. Davis suffered no injury in either incident, and, clearly, any alleged fear of harm from Casey was not such that it prevented Davis from voluntarily participating in basketball games with Casey. There is no evidence that Casey called Davis a child molester during either game, and no evidence that Mays or Davies knew prior to the basketball games that Casey had called Davis a child molester.[4] On this record, viewing the evidence in a light most favorable to Davis, a reasonable jury could not conclude that Mays or Davies knew of, or consciously disregarded, an excessive risk to Davis’s safety.
As to defendant Muscarella, a mental health counselor at HRYCI, Davis contends that he told Muscarella on several occasions prior to the basketball shoving incidents that Casey had accused him of being a child molester. According to Davis, Muscarella advised that “she was basically going to take care of it ... don’t worry about it.” There is, however, no evidence that Davis ever complained to Muscarella about a specific threat of harm, and it is undisputed that Davis never requested protection. Further, despite Casey’s presence, Davis chose to remain housed' in the ID Pod for mental health treatment when he could have sought a transfer from the unit at any time.[5] In addition, Davis does not dispute that he had a history of horseplay and altercations with other inmates, and that in the past he had displayed an ability to defend himself, not a vulnerability to attack. Muscarella had counseled Davis on ways to avoid confrontation.
We agree with the District Court that, at most, Muscarella’s actions might reflect negligence in failing to protect Davis from an environment in which he had been falsely labeled a child molester and had encountered an inmate (Casey) who had displayed hostility toward Davis. But this evidence does not reflect that Muscarella knew of and disregarded a substantial risk of serious harm to Davis. See Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (“It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clausef.]”). Muscarella flatly denies ever being aware of a substantial risk of harm to Davis, or of being indifferent to his need for protection, and the evidence of record does not support a reasonable inference to the contrary. Accordingly, summary judgment was appropriately entered.
b. Claim based on medical needs
After the altercation with Casey in the dining hall, defendant Way took Davis *607 to the infirmary, where he was examined by Nurse Jeremy. Davis was given gauze for his bleeding, as well as Motrin and ice, and returned to his unit. Davis was again examined by a nurse later the same day. At the time, Davis remained able to open his mouth and talk. The next day, when Davis was again examined, he was unable to open his mouth and his jaw was swollen. Davis was taken that day to a hospital for an x-ray, which revealed a “bilateral mandibular fracture.”
Davis was returned to HRYCI and housed in the infirmary for three days before returning to his cell. After five days in his cell, Davis returned to the infirmary, and, after a total of eleven days following the assault, he was taken to an outside hospital where surgery was performed to repair his jaw. Davis spent the night at the hospital, and then another three weeks in the prison infirmary upon his return.
At bottom, Davis complains about the length of time between the date of injury and the date of the surgery on his jaw. “To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm.” Giles v. Kearney, 571 F.3d 318, 330 (3d Cir.2009). “Deliberate indifference may be shown by intentionally denying or delaying medical care.” Id. (quotation marks omitted). “Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.” United States ex rel. Walker v. Fayette County, 599 F.2d 573, 575 n. 2 (3d Cir.1979) (quotation marks omitted). We agree with the District Court that, as a matter of law, Davis failed to raise a claim that defendants intentionally delayed appropriate care, or that a reasonable jury could conclude that defendants’ actions amounted to deliberate indifference to Davis’s medical needs. Consequently, the District Court properly entered summary judgment on this claim.[6]
IV.
Davis’s remaining claims were properly dismissed for the reasons fully explained by the District Court. Because we conclude that this appeal presents “no substantial question,” 3d Cir. IOP Ch. 10.6, the District Court’s judgment will be affirmed.

. The names of defendants Emig and Mays are misspelled in the case caption as "Em-mit” and “Mayes.”

. Nurse Jeremy's name is misspelled in the case caption as "Jeremey.” The docket also reflects that the United States Marshal's service of process on Jeremy was returned unex-ecuted because Jeremy no longer worked at HRYCI.

.We have fully considered Davis's "Informal Brief” in reaching this disposition.

. Although Davis asserted at deposition that Mays was aware that Casey had been calling Davis a child molester, Davis could not recall when he told Mays, and there is no evidence of record that he told Mays prior to the first basketball shoving incident.

. Davis contends that he suffers from learning disabilities, depression, and bipolar disorder, but he testified that he was taking medication for his mental health issues at the time of the incidents at issue in this case.

. We note that defendants also argued before the District Court that Davis failed to exhaust his administrative remedies, as required by 42 U.S.C. § 1997e(a). Although the District Court expressly declined to address this issue, we find the defendants' argument well-taken. The record is undisputed that Davis filed a single grievance regarding the altercations with Casey, indicating that he “would like someone to look into this matter to see why Officer Daves [sic] and Maze [sic] didn’t do anything to Mr. Casey and why this Incident wasn't documented.” Davis also stated that he “would like to press charges on Casey.” Davis raised no claim that the medical treatment for his broken jaw was inadequate. His grievance was denied at the first level of review by the Institutional Grievance Chair, who advised that Davis could not seek disciplinary action against staff and should direct his complaint to the staff member’s supervisor. Davis was also told that the action he requested was inappropriate or not complete, and that he must make an actual request. Davis did not file a new grievance or appeal the ruling given because, he testified, he was "satisfied with the answer they gave me.” Because Davis clearly did not exhaust administrative review on the claims raised in this suit, his suit was subject to dismissal for that reason, as well.