**Wardell Leroy GILES, Appellant**

v.

**Warden Rick KEARNEY, et al.**

No. 07–4140.

United States Court of Appeals, Third Circuit.

Argued March 10, 2009.

Filed July 15, 2009.

---

Kathryn J. Gainey (Argued), Steptoe & Johnson LLP, Washington, DC, Counsel for Appellant.

Judy Oken Hodas (Argued), Deputy Attorney General, Wilmington, DE, Counsel for Appellees.

Before: FUENTES, CHAGARES and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

This appeal arises from a pro se action brought by Appellant Wardell Leroy Giles, who suffered injuries including a broken rib and punctured lung after being forcibly subdued and kicked or "kneed" in the side by correctional officers while he was incarcerated at Sussex Correctional Institution ("SCI"). Giles filed claims under 42 U.S.C. § 1983 against the officers and other parties, alleging excessive force and deliberate indifference to medical needs in violation of the Eighth Amendment. Giles appeals from the District Court's order granting summary judgment based on qualified immunity for three officers in their individual capacities, and from the District Court's judgment in favor of the remaining Appellees.

Because Giles testified that he was kicked and punched while fully restrained on the ground, after he ceased to resist, Giles alleges conduct in violation of his Eighth Amendment rights that a reasonable officer would have known was a violation under the circumstances, and we will reverse the District Court's grant of summary judgment for the three correctional officers in their individual capacities. We will affirm the judgment of the District Court with regard to the other Appellees.[1]

## I.

Giles contends that the District Court did not accept his factual allegations as true or adequately address the defendants' use of force in its summary judgment analysis. Giles also contends that the District Court did not properly consider the five factors established in *Whitley v. Albers*, 475 U.S. 312, 322, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986), in its conclusion that the force used against him was not excessive, and that the District Court erred in finding that the correctional officers were not deliberately indifferent to his serious medical needs and did not adequately address conflicting testimony as to whether Giles had requested medical treatment.

---

**1.** The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. We have jurisdiction pursuant to 28 U.S.C. § 1291.

■ On an appeal from a grant or denial of summary judgment, our review is plenary and we apply the same test the district court should have utilized initially. *See Alexander v. Nat'l Fire Ins.*, 454 F.3d 214, 219 (3d Cir.2006); *Brooks v. Kyler*, 204 F.3d 102, 105 n. 5 (3d Cir.2000). A court may grant summary judgment only when the record "shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Federal Rules of Civil Procedure. In this analysis, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor" in determining whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The mere existence of some evidence in support of the nonmovant is insufficient to deny a motion for summary judgment; enough evidence must exist to enable a jury to reasonably find for the nonmovant on the issue. *Id.* at 249, 106 S.Ct. 2505. Where the plaintiff is a pro se litigant, the court has an obligation to construe the complaint liberally. *See Haines v. Kerner*, 404 U.S. 519, 520–521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Gibbs v. Roman*, 116 F.3d 83, 86 n. 6 (3d Cir.1997).

■ A district court's findings of fact under Rule 52(a) are reviewed for clear error. *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 394–395, 68 S.Ct. 525, 92 L.Ed. 746 (1948). Rule 52(a) requires that the district court's ultimate decision be supported by subordinate factual findings. *O'Neill v. United States*, 411 F.2d 139, 146 (3d Cir.1969). However,

> In reviewing the decision of the District Court, our responsibility is not to substitute findings we could have made had we been the fact-finding tribunal; our sole function is to review the record to determine whether the findings of the District Court were clearly erroneous, i.e., whether we are "left with a definite and firm conviction that a mistake has been committed." It is the responsibility of an appellate court to accept the ultimate factual determination of the fact-finder unless that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data.

*Krasnov v. Dinan*, 465 F.2d 1298, 1302 (3d Cir.1972) (internal citation omitted). In bench trials, a district court's application of the deliberate indifference and excessive force legal standards to a set of facts is also guided by the clear error standard. *See Goffman v. Gross*, 59 F.3d 668, 671–672 (7th Cir.1995) (deliberate indifference); *Quezada v. County of Bernalillo*, 944 F.2d 710, 715 (10th Cir.1991) (excessive force); *Jacobs v. City of New Orleans*, 484 F.2d 24, 26 (5th Cir.1973) (excessive force).

Clear error review is deferential: "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). When a district court's findings are based on credibility determinations, Rule 52(a) demands even greater deference. *Id.* Nevertheless, a court may not insulate its findings from review by "denominating them credibility determinations, [because] factors other than demeanor ... go into the decision whether or not to believe a witness." *Id.* at 575, 105 S.Ct. 1504.

## II.

The relevant evidence concerns two related use-of-force incidents at SCI after

Giles had been transferred there, as well as the medical aftermath of those incidents. One incident occurred in a prison shower during Giles' intake process; the second occurred several hours later in a cell in the prison infirmary.

## A.

Giles was transferred to SCI from another facility on November 27, 2001. On that day, he was brought to the receiving and processing area for new inmate intake procedures including a strip search and shower. Present in the intake area were Corporal Dean Blades, Sergeant Charles Steele and Sergeant Bob Cassase.

Giles was wearing a red religious cap called a kufi, which Blades asked him to remove and informed him was in violation of a new SCI policy that permitted only white kufis. Giles became angry and refused to hand over his kufi, cursing at Blades and arguing that he did not believe there was such a policy. After repeated orders, Giles eventually relinquished his kufi. Cassase then ordered Giles to strip down to be searched. Giles initially refused to remove his boxer shorts or expose himself for inspection, but complied after the orders were repeated.

Giles was then ordered to take a shower. He cursed at the guards and argued that he had already taken a shower that day, but ultimately complied. After he entered the shower, Giles had trouble turning on the water, and Blades entered to show Giles how to operate the shower. A verbal altercation ensued, with Giles resisting Blades' assistance and cursing him. When Giles cursed Blades in the shower, Blades pulled out his cannister of capstun—a potent form of pepper spray—and sprayed Giles, temporarily blinding him. After being capstunned, Giles swung his arm and struck Blades in the mouth. For hitting Blades, Giles later was found guilty of

assault on a staff member, in an administrative hearing on December 7, 2001. On July 29, 2002, Giles also pled no contest to misdemeanor assault in the third degree for the same conduct, in the Superior Court of Delaware in Sussex County, pursuant to Del.Code Ann., tit. 11 § 611. *State of Delaware v. Wardell L. Giles,* Crim. No. 02–06–0330 (Del.Super.Ct. July 29, 2002).

Blades called for reinforcement to subdue Giles, and Steele, Cassase and Sergeant Gary Campbell responded to the scene. The officers tackled Giles, Blades and Campbell wrestled Giles to the floor of the shower, and Blades sat on Giles' middle back and held his legs. The record reflects that Giles is 5 feet 7 inches tall and weighed 195 pounds, and Blades weighed 275 pounds. The officers testified that Giles continued struggling and pushing against Blades and did not comply with orders to put his hands behind his back to be handcuffed, shaking his head "no" in response to requests to do so. Giles testified that he stopped resisting once on the ground but was unable to put his hands behind him because Blades was sitting on his back. Giles explained that he was shaking his head to indicate that he was unable to present his hands. Giles stated that the officers kicked him in the ribs and punched him in the head after he had stopped resisting, while he was prostrate on the ground with Blades sitting on him. Campbell's incident report stated that Campbell "hit [inmate] Giles in his side with my knee to try to make him give up his arms to be cuffed." App. 108.

After the officers finally had him cuffed, Giles had a bloody nose and complained of other injuries. He was assessed by nurse Amy Whittle, who reported that Giles complained of pain in his left side and told her that he had heard one of his ribs snap. Giles also insisted that he could not

breathe and complained of shortness of breath. Nurse Whittle observed a large red area under Giles' left nipple and a slightly elevated respiratory rate. She concluded that Giles did not have a punctured lung, and spoke with a doctor by phone who arranged an order for X-rays the following day and instructed that Giles' condition should be monitored. Giles was then transferred to a security cell in the infirmary.

### B.

Around 2:00 a.m., Giles started banging forcefully on his cell door, shouting and cursing and demanding pain medication. The parties dispute whether Giles also requested medical attention or requested to see a physician at this time, and they dispute whether any of the officers on duty were informed of Giles' possible injuries when their shift began. Correctional officers on duty ordered Giles to stop shouting and beating on the door; he did not comply. Officer Michael Ackenbrack responded to Giles' cell and told Giles he would check about his request for medication. The nurse on duty informed Ackenbrack that no medicine was prescribed for Giles, so Ackenbrack told Giles that he would not receive any medication. Giles became even more agitated and continued hitting and shaking the cell door. Sergeant Keith Lloyd, Officer Michael Milligan and Officer Rick Justice joined Ackenbrack outside the cell. Lloyd opened the cell, and Ackenbrack capstunned Giles with a single spray from about two to four feet away. A nurse on duty examined Giles after this second capstunning and found his breathing and blood oxygen levels to be normal.

The next day, November 28, 2001, Giles received X-rays that revealed he had a broken rib and collapsed lung. He was transferred by ambulance to a local hospital where he had surgery and received treatment, more than 24 hours after his initial injury. Giles was returned to SCI on December 2, 2001.

### C.

On December 11, 2001, Giles was transferred to Delaware Correctional Center ("DCC"). On June 24 and June 25, 2002, Giles filed internal grievances while at DCC for his injuries caused by the correctional officers' use of force at SCI. On August 20, 2002, Giles was transferred to a facility in Maryland. Giles received no response to his grievance, and prison records state that the grievance was "resolved" at "Level 5," which means it was closed when Giles was transferred out of state to Maryland, on August 20, 2002.[2] The sequence of Giles' subsequent transfers is unclear, but at the time he filed the underlying complaint in this case, on November 13, 2002, he was incarcerated in Delaware again, at Morris Community Correction Center.

On November 13, 2002, Giles filed the underlying pro se complaint pursuant to 42 U.S.C. § 1983 in the District Court for the District of Delaware, against Warden Richard Kearny, Nurse Whittle, and correctional officers Campbell, Cassase, Steele, Lloyd, Blades, Milligan, Justice and Ackenbrack.

On June 24, 2006, the District Court granted Whittle's motion to dismiss for failure to state a claim and granted summary judgment in favor of: (1) Kearney; (2) Campbell, Cassase, Steele, Lloyd, Blades, Milligan, Justice and Ackenbrack in their official capacities; and (3) Cassase,

---

**2.** The District Court properly held that under these circumstances, Giles "exhausted" his administrative remedies prior to filing the underlying action, in accordance with the Prison Litigation Reform Act, 47 U.S.C. § 1997e(a). App. 55.

Steele and Campbell in their individual capacities. The District Court held that officials of reasonable competence could disagree as to whether the force used was reasonable under the circumstances, and found it significant that Giles had pled no contest to misdemeanor assault related to the incident. Summary judgment was denied to Blades, Lloyd, Justice, Milligan and Ackenbrack in their individual capacities.

Giles was provided with court-appointed counsel through the Federal Civil Panel on April 19, 2006. A two-day bench trial was held on November 29, 2006, and December 8, 2006, on the remaining claims. Giles' medical expert gave unrebutted testimony that Giles was subject to the risk of a life-threatening injury due to the delay of over 24 hours in his diagnosis and transfer to the hospital. The District Court made findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a),[3] and held that Giles had not demonstrated by a preponderance of the evidence that the defendants had violated his rights under 42 U.S.C. § 1983. The District Court also stated that with respect to its factual determinations, it found the testimony of Giles to be less credible than that of defense witnesses. Judgment was entered in favor of the defendants on September 28, 2007.

Giles timely filed a pro se notice of appeal on October 16, 2007, and a notice of appeal was filed on his behalf on October 24, 2007. Giles moved for appointment of counsel by this Court on November 16, 2007. The Appellees moved for summary affirmance on December 14, 2007. Giles was given leave to appeal in forma pauperis on January 23, 2008. On May 12, 2008, a motions panel of this Court determined that Giles' appeal had arguable merit and would not be dismissed under 28 U.S.C. § 1915(e)(2), denied Appellees' motion for summary affirmance, and appointed appellate counsel for Giles.

### III.

Giles contends that Cassase, Steele and Campbell were improperly granted summary judgment on the basis of qualified immunity. Government officials are immune from suit in their individual capacities unless, "taken in the light most favorable to the party asserting the injury, ... the facts alleged show the officer's conduct violated a constitutional right" and "the right was clearly established" at the time of the objectionable conduct. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 202, 121 S.Ct. 2151 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). "If officers of reasonable competence could disagree on th[e] issue, immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). The Supreme Court recently held that the sequence of the two-part Saucier analysis is no longer mandatory; trial courts are now permitted to use discretion as to which prong of the analysis to apply first. *See Pearson v. Callahan*, —— U.S. ——, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009).

Qualified immunity is a complete immunity from suit, not just a defense to liability, and is considered at the earliest possible stage of proceedings, apart from

---

**3.** "In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately." Rule 52(a), Federal Rules of Civil Procedure.

the analysis of the underlying claim itself. *Saucier*, 533 U.S. at 194, 121 S.Ct. 2151. The issue of qualified immunity is generally a question of law, although a genuine issue of material fact will preclude summary judgment on qualified immunity. *See Deary v. Three Un–Named Police Officers*, 746 F.2d 185, 192 (3d Cir.1984); *Czurlanis v. Albanese*, 721 F.2d 98, 108 n. 8 (3d Cir.1983).

The Appellees contend that Cassase, Steele and Campbell were properly awarded qualified immunity because Giles was a belligerent, uncooperative, unrestrained inmate who did not respond to capstun and who struck an officer. The Appellees contend that no constitutional violation was alleged on the facts, and that under the circumstances, it was not clearly established that it was a violation of Giles' constitutional rights to exercise the force used to subdue him.

The primary step in assessing the constitutionality of the officers' alleged actions is to determine the relevant facts. *Scott v. Harris*, 550 U.S. 372, 378, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The District Court was required to view the facts in the light most favorable to the plaintiff. *See Saucier*, 533 U.S. at 201, 121 S.Ct. 2151; *see also Scott*, 550 U.S. at 378, 127 S.Ct. 1769 ("In qualified immunity cases [on summary judgment], this usually means adopting ... the plaintiff's version of the facts."). Also, " 'an inmate who is proceeding pro se, is in a decidedly difficult position from which to generate "record evidence" on his behalf ... under these circumstances, his affidavits ... are about the best that can be expected from him [at the summary judgment phase of] the proceedings.' " *Brooks v. Kyler*, 204 F.3d 102, 109 (3d Cir.2000) (quoting *Norman v. Taylor*, 25 F.3d 1259, 1265 (4th Cir.1994) (Hall, J., dissenting)). Giles testified that he was kicked in the ribs and punched in the head

while restrained on the ground, after he ceased to resist. Accepting Giles' version of the events as true, he has alleged facts showing that Cassase, Steele and Campbell violated his Eighth Amendment rights during the shower incident.

▇▇▇▇ The test for whether a claim of excessive force is constitutionally actionable is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). The relevant factors for a court to consider are: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response. *Id.; see also Brooks*, 204 F.3d 102 (same).

▇▇▇▇ Although the qualified immunity inquiry is not a merits analysis, the *Whitley* test serves as a touchstone of the established law of which a reasonable officer may be presumed to have been aware. Additionally, at the time of the incident in 2001, it was established that an officer may not kick or otherwise use gratuitous force against an inmate who has been subdued. *See, e.g., Skrtich v. Thornton*, 280 F.3d 1295, 1303 (11th Cir.2002) ("By 1998, our precedent clearly established that government officials may not use gratuitous force against a prisoner who has already been subdued or, as in this case, incapacitated."). The *Skrtich* court, for example, affirmed denial of qualified immunity where "a non-compliant inmate who had been restrained by the guards and no longer posed a threat" sustained injuries, includ-

ing rib fractures, as a result of force applied by prison guards after the inmate had been electrically shocked by guards and had fallen to the floor of his cell. *Id.* at 1300, 1304.

In holding that no constitutional right was clearly established at the time of the incident and in granting qualified immunity to the officers in their individual capacities, the District Court noted Giles' factual allegations. But, the District Court emphasized that Giles had been found guilty in an administrative hearing of assaulting a correctional officer for hitting Blades, and that Giles had pled no contest in state court to assault in the third degree for the same conduct. Because correctional officers may use force against an inmate to preserve order, the District Court concluded that "[a]n objective review of the record demonstrates that officials 'of reasonable competence could disagree' as to whether the force used by these defendants against plaintiff, an assaultive inmate, was excessive under the circumstances." App. 61. The District Court did not mention or address the Whitley test.

 Although the District Court may be correct in its conclusion of law, that reasonable officers dealing with an undisputedly assaultive inmate could disagree as to whether force of the type used against Giles was excessive, such a legal conclusion in this case rests on a factual presumption that is inappropriate on summary judgment. A dispute of material

fact exists as to whether Giles had ceased resisting at the point at which he was kicked or "kneed" in the side. Giles submits that he was on the ground, no longer struggling and fully restrained by the much heavier Blades sitting on his back—although unable to get his hands behind him because of Blades' presence—when he was kicked and punched in the head. Campbell's undisputed incident report states that Campbell hit Giles with his knee in the side when Giles was on the ground. The Appellees contend that Giles was still struggling and refusing to give up his hands to be cuffed at this point, or at least that a reasonable officer could perceive that to be the case based on his behavior, but we must accept Giles' version of the facts.[4] The administrative assault determination and state court no contest plea for Giles' hitting Blades, before he was wrestled to the ground, do not provide a blank check justification for correctional officers' excessive use of force thereafter.

Because Giles testified that he was hit and kicked while restrained on the ground, after he ceased to resist, Giles alleges conduct by the officers in violation of his Eighth Amendment rights that a reasonable officer would have known was a violation under the circumstances. No reasonable officer could agree that striking and kicking a subdued, nonresisting inmate in the side, with force enough to cause a broken rib and collapsed lung, was reasonable or necessary under established law. Accordingly, because accounts of this criti-

---

4. The Appellees note, correctly, that qualified immunity analysis and summary judgment legal standards for a constitutional claim are *not susceptible to fusion, and that denying* summary judgment because a material issue of fact remains on an excessive force claim is improper on a qualified immunity inquiry. *See Saucier,* 533 U.S. at 194, 121 S.Ct. 2151. However, in the instant case, the disputed facts are material to the qualified immunity analysis. The question of whether Giles was

fully subdued or not once he was on the ground with Blades sitting on him makes a difference as to whether a reasonable official would have considered the force used reasonable and necessary under the circumstances. Denying summary judgment on the basis of this factual dispute, therefore, is not an improper *"fusion" of qualified immunity analysis and the merits analysis of Giles' constitutional claim.*

cal event were controverted, on summary judgment it was improper to dismiss Giles' complaints against Cassase, Steele and Campbell on the basis of qualified immunity.

## IV.

■ Giles also contends that the District Court clearly erred in finding that the use of force by Blades in the shower incident, and by Lloyd, Ackerman, Milligan and Justice in the infirmary cell incident, was not excessive. Again, the test for excessive force is the Whitley test recited above: "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 319, 106 S.Ct. 1078. The relevant factors for a court to consider are: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response. *Id.; see also Brooks,* 204 F.3d 102 (same). Under *Whitley* and *Brooks,* whether force was applied in a good faith effort to restore discipline turns in part on the extent of the threat as reasonably perceived by the officers on the basis of facts known to them. Force that exceeds that which is reasonable and necessary under the circumstances is actionable. *Davidson v. O'Lone,* 752 F.2d 817, 827 (3d Cir.1984), aff'd, 471 U.S. 1134, 105 S.Ct. 2673, 86 L.Ed.2d 692 (1985). Deference is given to prison officials' adoption and execution of policies to preserve internal order, discipline and security. *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

■ "In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately." Rule 52(a), Federal Rules of Civil Procedure. In reviewing the judgment of a trial court, an appellate court may vacate the judgment and remand the case for findings if the trial court has failed to make findings when they are required or if the findings it has made are not sufficient for a clear understanding of the basis of the decision. *H. Prang Trucking Co., Inc. v. Local Union No. 469,* 613 F.2d 1235, 1238–1239 (3d Cir.1980). Rule 52(a) is not satisfied "by the statement of the ultimate fact without the subordinate factual foundations for it which also must be the subject of specific findings." *O'Neill v. United States,* 411 F.2d 139, 146 (3d Cir.1969). If subordinate findings were reached in the process of arriving at the ultimate factual conclusion, they must be articulated. *Id.*

Giles contends that the District Court erred by not articulating the precise relation of its findings to each Whitley factor and in not conducting a written weighing analysis. The Appellees contend that the District Court's findings exceed the requirements of Rule 52(a) and conform to the Eighth Amendment standard of Whitley.

The District Court made its findings of fact and conclusions of law separately, pursuant to Rule 52(a). The District Court made detailed findings of fact regarding both the shower and infirmary incidents, and stated that with respect to its factual determinations, it found the testimony of Giles to be less credible than that of the defense witnesses. In its legal conclusions regarding Giles' excessive force claims, the District Court accurately recited the Whitley test and factors. The District Court stated: "Considering the five Whitley factors against the findings of fact, the court

concludes the force used, on each occasion in dispute, was not maliciously and sadistically applied to cause harm." App. 42. The District Court then proceeded to elaborate on its conclusion.

With respect to Blades' use of capstun on Giles in the shower, the District Court concluded that the use of capstun instead of physical force was a proportionate and reasonable response to the situation. Blades was alone with Giles, an increasingly belligerent inmate, and Giles was aggressive and repeatedly refused to obey orders. With respect to the physical force used in the shower incident after Giles struck Blades, when correctional officers attempted to physically subdue Giles and Blades helped wrestle Giles down to the floor and then sat on Giles' back holding his legs, the District Court concluded that the force was not excessive because physical handling was necessary to control Giles after capstun failed to subdue him and the situation escalated.[5] The second use of capstun on Giles, by officers in the infirmary cell, was held to be a proportionate response to Giles repeatedly refusing to obey orders to stop shouting and banging on his cell door at 2:00 a.m.

On clear error review, this Court has limited power to disturb the decision below. The District Court's findings need only be "sufficient to indicate the factual basis for the ultimate conclusion." *Kelley v. Everglades Drainage Dist.*, 319 U.S. 415, 422, 63 S.Ct. 1141, 87 L.Ed. 1485 (1943). We give deference to the district court's account of the evidence if plausible in light of the entire record, even if as the trier of fact we might have weighed it differently. *Anderson*, 470 U.S. at 573, 105 S.Ct. 1504. When, as here, a district court's findings are based on a credibility determination, Rule 52(a) demands even greater deference. *Id.* at 573, 105 S.Ct. 1504. Although a more particularized analysis might have been helpful, the record reflects that the District Court considered the Whitley factors, and we determine that the findings made by the District Court were sufficient for a clear understanding of the basis of the decision. We find no clear error.

## V.

Finally, Giles contends that the District Court erred in finding that the correctional officers were not deliberately indifferent to his serious medical needs when he was denied pain medication and capstunned in the prison infirmary.

---

5. Giles also contends that the District Court erred by not considering Blades' actions in the context of all the officers' conduct in the entire, consecutive shower incident; even if Blades did not kick Giles or otherwise strike the injurious blow he should be liable for any unconstitutionally inflicted injuries. *See, e.g. Sutton v. Rasheed*, 323 F.3d 236, 249 (3d Cir.2003) (defendant with "personal involvement in the alleged wrongs" may be liable in a civil rights action); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988) ("personal direction of or actual knowledge and acquiescence" may constitute personal knowledge, although allegations of such must be made with appropriate particularity). The District Court made no finding that Blades was not "personally involved" when other officers kicked or hit Giles in the ribs. The District Court, however, did discuss Blades' conduct in the context of "the unfolding situation" and the fact that additional "correctional officers responded and attempted to subdue Giles" after Giles struck Blades and "physical handling [became] necessary." App. 43. The District Court stated that "the force used after Giles struck Blades was not excessive considering the evolving series of events." *Id.* We thus cannot conclude from the record that the District Court failed to consider Blades' actions in light of all the officers' conduct. To the extent that Giles argues that Blades should have intervened, this issue is raised for the first time on appeal and thus may not be considered. *See Harris v. City of Philadelphia*, 35 F.3d 840, 845 (3d Cir.1994).

To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm. *Estelle v. Gamble,* 429 U.S. 97, 104–105, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Farmer v. Brennan,* 511 U.S. 825, 836, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Deliberate indifference may be shown by "intentionally denying or delaying medical care." *Estelle,* 429 U.S. at 104, 97 S.Ct. 285. "The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health,'" *Farmer,* 511 U.S. at 843, 114 S.Ct. 1970 (quoting *Helling v. McKinney,* 509 U.S. 25, 35, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993)). Under a recklessness standard, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk." *Farmer,* 511 U.S. at 844, 114 S.Ct. 1970.

Giles' medical expert presented unrebutted testimony that Giles was subjected to the risk of a life-threatening injury due to the delay of over 24 hours in diagnosis and transfer to the hospital. When a rib is broken and a lung punctured, the lung collapses and outside air pressure increases in the chest cavity outside of the collapsed lung. The pressure can cause internal organs to move, cutting off blood flow to the heart and increasing the risk of death. The delay in medical care thus exposed Giles to a substantial risk of serious damage to his future health. But it is not clear that the correctional officers who responded in the infirmary incident recklessly disregarded this risk or intentionally denied or delayed medical care under the circumstances.

The District Court concluded that deliberate indifference by the correctional officers was not shown in the infirmary incident because there was no evidence that the responding officers knew of Giles' medical condition and because Giles received medical care and assessment following each event. Giles counters with the deposition of Officer Justice, who stated in his deposition that it was customary to be informed at shift changes whether there had been fights with inmates, and that "[w]e heard ... when we came on shift" that Giles had "something wrong with one of his ribs, punctured lung, or something like that." App. 493, 268–269. Justice recanted his deposition testimony at trial, calling it a "misstatement." However, in any event, the fact that Giles was either sick or injured could be inferred from him being in the infirmary, and we conclude that even if the responding officers had known of the risk the evidence is sufficient to support the District Court's determination that they responded reasonably.

Correctional officers responded to a loud disturbance by an inmate shouting and beating on his cell door at the wee hour of 2:00 in the morning. When Giles requested medication, Ackenbrack checked with the nurse on duty and found that no medication was prescribed. It accordingly could be found reasonable for Giles' request to be refused. Giles contends that he also requested additional medical attention at this time, but the District Court in its discretion found his testimony less credible than that of the officers. Giles became even more agitated and continued shouting and hitting and shaking the door even harder, so hard that officers feared that the door could break from its hinges. After Giles ignored repeated requests to calm down, the officers administered a single spray of capstun to subdue him. This could be found to be a proportionate and reasonable response to an inmate's disturbing conduct late at night, even a potentially

injured inmate. Given our deference to the District Court's factual findings and credibility determinations, we cannot conclude that the District Court clearly erred in holding that there was no deliberate indifference to Giles' serious medical needs.

\*　\*　\*　\*　\*　\*

For the foregoing reasons, we will reverse and remand the June 24, 2006, order of the District Court granting summary judgment for Cassase, Steele and Campbell. We will affirm the September 27, 2007, judgment of the District Court in favor of the remaining Appellees.