OPINION OF THE COURT

STAPLETON, Circuit Judge:
Steven McDowell filed this civil action pursuant to 42 U.S.C. § 1983 and New Jersey state law, alleging that certain prison officials at Northern State Prison (collectively, “Defendants”)[1] violated the First, Fourth, Eighth, and Fourteenth Amendments and Article One of the New Jersey Constitution. The events giving rise to the lawsuit occurred during and in the aftermath of a prisoner extraction in November of 2004.
The District Court granted summary judgment to Defendants on all of McDowell’s federal claims and dismissed his state constitutional claim without prejudice. McDowell only appeals the District Court’s order with respect to his Eighth Amendment excessive force and deliberate indifference claims. Because we write only for the benefit of the parties, we *290 assume familiarity with the facts of this civil action and the proceedings in the District Court. We will reverse the judgment of the District Court and remand for further proceedings.
I.
McDowell is an inmate at Northern State Prison (“NSP”) in New Jersey, serving a twenty-year sentence for armed robbery and weapon offenses. In November 2004, he was housed in a security threat group management unit in Delta 300 East. At some point late at night on November 7 or in the early morning of November 8, 2004, McDowell and his cellmate, Carlos Cruz, were able to exit their cell. The parties dispute the circumstances of how the inmates got out of their cell. McDowell claims that Cruz was sick and seeking medical attention and that he was assisting Cruz when they were both locked out of their cell. Defendants assert that McDowell and Cruz pretended to need medical treatment, and that, once the cell door was opened so that one of them could be escorted to the infirmary, the two inmates left the cell and refused to submit to handcuffing or to return to their cell, as they were required to do. It is undisputed that McDowell and Cruz were not handcuffed and that they were able to walk around the fenced-in tier to the cells of other inmates.
Two teams of five officers each then arrived to perform extractions of McDowell and Cruz in order to return them to their cells.[2] The officers on the extraction teams wore protective gear, including vests, pads, and helmets with face masks, and carried body shields for use in restraining the inmates. The extraction of McDowell was videotaped by an NSP official and by an inmate who had smuggled a video-recorder into prison, and both recordings are part of the record before us.
Before the extraction began, members of the extraction team used pepper spray in an attempt to subdue McDowell and Cruz. This effort, however, was unsuccessful because the inmates used plastic bags, which another inmate had given them, to shield their faces from the spray. The officers then began the extraction by entering the tier in which McDowell and Cruz were standing. McDowell and Cruz moved toward one of the teams of officers. The parties dispute the events that occurred thereafter.
McDowell testified in his deposition that he was pushed to the floor as soon as the officers converged on him. He claimed that he did not resist and the officers were able to handcuff him quickly. Nevertheless, they continued to punch or kick him after he was restrained. He also testified that he was repeatedly hit in the face with a nightstick and that an officer grabbed and twisted his testicles after he was on the ground. McDowell stated that the officers shackled his ankles so tightly that he lost circulation in his feet. He further testified that one officer exerted force on his wrist, in what he believed was an effort to break his hand. McDowell insisted that throughout the extraction he kept yelling that he was not resisting. He stated that after he was handcuffed and shackled, he was picked up and then walked into another part of the unit. According to him, his face was slammed into a wall and an officer choked him until he lost consciousness. McDowell stated that he was then re *291 turned to his cell, and was denied clothing and medical treatment for his injuries for two weeks. As a result of the extraction, McDowell claims that he suffered cuts above his right eye, bruises on his skull, and an injury to his hand. He also claims that the incident left him with permanent injuries, including vision loss in his right eye, scarring above his eye, lumps on his skull, weakness in his hand, and that he now sometimes experiences dizziness. He also claims that he was emotionally damaged by the incident.
Defendants testified to a different version of events. The officers testified that McDowell approached the officers aggressively, resisted being handcuffed and shackled, and continued to struggle once he was on the floor. One officer testified that the officers ceased using force as soon as McDowell was restrained, and another testified that nightsticks were not used on McDowell during the extraction. Once McDowell was restrained, they contend that he was taken to a nearby hallway where he was given medical treatment. Defendants state that McDowell’s clothing was removed so that he could be searched for weapons and then showered to remove any remaining pepper spray. After this occurred, they assert that he was returned to his cell. Defendants claim that McDowell was not left naked in his cell for two weeks, but, instead, insist that their evidence shows that his personal property was returned to him the next day.
As a result of the extraction and the events following it, McDowell filed a pro se complaint in the United States District Court for the District of New Jersey. Counsel was appointed to represent McDowell. He sought declaratory and injunc-tive relief, compensatory damages, punitive damages, and attorneys’ fees and costs.
After discovery, Defendants filed a motion for summary judgment. After oral argument and supplemental briefing, the District Court granted summary judgment in favor of Defendants on all of McDowell’s federal claims and dismissed his state constitutional claim without prejudice. With respect to the Eighth Amendment excessive force and deliberate indifference claims at issue in this appeal, the Court determined that Defendants were entitled to qualified immunity because none of McDowell’s constitutional rights was violated. McDowell filed a timely notice of appeal.
On appeal, McDowell first argues that the District Court erred by concluding that the video evidence blatantly contradicted McDowell’s version of events and, therefore, deciding not to view the facts in the light most favorable to McDowell. Second, he contends that when the facts are viewed in the light most favorable to him, there is a genuine issue of material fact as to whether Defendants used excessive force during the extraction and whether Defendants acted with deliberate indifference in its aftermath.
II.
We exercise plenary review over a District Court’s decision to grant summary judgment. Giles v. Kearney, 571 F.3d 318, 322 (3d Cir.2009). Summary judgment is appropriate when the record establishes that “there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(c). In making this determination, “[t]he evidence of the non-mov-ant is to be believed, and all justifiable inferences are to be drawn in his favor.” Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, in a case such as this one, where there are video recordings of *292 the incident in question, we need not adopt the non-movant’s version of the facts if the recording “blatantly contradict[s]” the non-movant’s version “so that no reasonable jury could believe it.” Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).
III.
Government officials are protected by the doctrine of qualified immunity “insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.” Pearson v. Callahan, — U.S.-, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). When deciding whether an official is entitled to qualified immunity, a court must determine if the facts alleged establish that the official violated a constitutional right of the plaintiff and if that constitutional right was clearly established at the time the officer acted. See id. at 815-16 (citing Saucier v. Katz, 533 U.S. 194, 200-02, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).
A. Excessive Force
To recover on a claim of excessive force under the Eighth Amendment, a plaintiff must show that his treatment amounted to an “unnecessary and wanton infliction of pain.” Whitley v. Albers, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). Whether the use of force rises to such a level is determined by “whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.” Hudson v. McMillian, 503 U.S. 1, 6, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (quoting Whitley, 475 U.S. at 320-21, 106 S.Ct. 1078 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.1973))). In resolving this question, a court must evaluate “(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.” Giles, 571 F.3d at 328. “Force that exceeds that which is reasonable and necessary under the circumstances is actionable.” Id.
Thus, we must evaluate whether McDowell has raised a genuine issue of material fact regarding his claim that the officers used force “maliciously and sadistically for the very purpose of causing harm.” Hudson, 503 U.S. at 6, 112 S.Ct. 995. In making this determination, the District Court refused to accept McDowell’s version of events, as it is generally required to do when ruling on a motion for summary judgment, because it concluded that the videos of the extraction “ ‘blatantly contradicted]’ the story spun by McDowell.” McDowell v. Sherrer, No. 04-6089, 2008 WL 4542475, at *12 (D.N.J. Oct.7, 2008).
After carefully reviewing both of the videos in the record, we conclude that the District Court should have accepted McDowell’s version of events when ruling on this question because neither of the videos “blatantly contradicts]” McDowell’s account such that no reasonable jury could believe it. The videos do show that McDowell and Cruz were yelling and challenging the officers before the extraction began, and they also establish that the inmates used plastic bags to avoid pepper spray used by the officers. However, once the extraction begins, we are unable to determine from the videos whether McDowell is resisting the officers or to determine the amount of force used on him. We cannot *293 make this determination because McDowell is forced to the ground early in the confrontation, and the view of his body is completely obstructed by the bodies of at least five officers while they handcuff and shackle him. After he was moved outside of the unit, McDowell claims that he was slammed against a wall and choked until he was rendered unconscious. Again, we are unable to conclude that the NSP video contradicts McDowell’s account because officers’ bodies block the view of the camera.[3] Because the videos simply do not show what happened during these crucial moments, we do not believe they blatantly contradict McDowell’s account.
In fact, portions of the videos are consistent with McDowell’s account. In both videos, McDowell can be heard yelling “I am not resisting” when he is underneath the officers. Second, the video recorded by the inmate shows that an officer who was standing near McDowell’s body did have a nightstick in his hand — consistent with McDowell’s testimony that he was hit in the head repeatedly by nightsticks. Additionally, when McDowell is led away from the tier, his face is covered with blood, suggesting that he suffered an injury during the extraction. As McDowell is led off the tier floor, an officer has his arm around McDowell’s neck and McDowell is pressed against the wall. The officers thereafter lay McDowell to the ground, as if he is not able to stand on his own. These events are consistent with McDowell’s testimony that he was choked until he was unconscious.
Accordingly, we believe that the District Court erred when it concluded that the videos contradicted McDowell’s version of events and then refused to accept his testimony when ruling on the motion for summary judgment.
Accepting McDowell’s account, as we must in this posture, we conclude that he did raise a genuine issue of material fact on his excessive force claim. His testimony that he was restrained and not resisting directly contradicts that of Defendants, and resolution of this factual issue is material to deciding whether McDowell has established that his constitutional rights were violated. Certainly, Defendants had wide discretion in determining how to appropriately return the two inmates to their cells. See, e.g., Hudson, 503 U.S. at 6-7, 112 S.Ct. 995; Whitley, 475 U.S. at 320-22, 106 S.Ct. 1078. However, if McDowell is able to establish that Defendants punched, kicked, hit him in the head with nightsticks, and twisted his testicles, when he was restrained and not resisting, he will have established a violation of the Eighth Amendment. See Giles, 571 F.3d at 327. Similarly, if McDowell is able to establish that the officers choked him until he lost consciousness — when he was restrained, not resisting, and not presenting any threat to the officers — -he will have shown a violation of his constitutional rights. See id. Additionally, by 2004, “it was established that an officer may not ... use gratuitous force against an inmate who has been subdued.” See id. at 326.
Thus we conclude that the District Court erred by granting summary judgment to Defendants on McDowell’s Eighth Amendment excessive force claim.
B. Deliberate Indifference
Next, McDowell argues that the District Court erred by granting summary judgment on his Eight Amendment deliberate indifference claim because it improperly *294 resolved disputed factual matters in favor of Defendants. We again agree that the District Court so erred.
As Defendants acknowledge, “prison officers are under a constitutional obligation to ‘ensure that inmates receive adequate clothing, shelter and medical care.’ ” Appellees’ Br. at 19 (quoting Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). In order to recover, a plaintiff alleging a violation of this obligation must show 1) that the deprivation alleged was “sufficiently serious,” such that it “result[ed] in the denial of the minimal civilized measure of life’s necessities” and 2) that prison officials “[knew] of and disregard[ed] an excessive risk to inmate health and safety.” See Farmer, 511 U.S. at 834, 837, 114 S.Ct. 1970 (internal quotations omitted). Here, McDowell alleged that prison officials acted with deliberate indifference to his health and safety when they removed his clothes as part of the extraction and did not return them for two weeks.[4] His claim was supported by his own deposition testimony and that of his cellmate, Cruz. Defendants moved for summary judgment on this claim, arguing that prison records and the deposition testimony of a non-party prison official established that McDowell’s personal belongings were returned to him the day after the extraction.
The District Court granted summary judgment on this claim after concluding that McDowell had clothes the day after the extraction and was not deprived of clothing for approximately two weeks. In reaching this conclusion, the District Court apparently did not credit McDowell’s or Cruz’s testimony that they were left without clothing for two weeks. The Court relied on its own interpretation of arguably ambiguous testimony from a defense witness to support its conclusion.[5] Even if we agreed with District Court’s interpretation of that witness’s testimony, however, it erred by acting as a finder of fact rather than accepting all inferences in favor of McDowell and then determining whether there was a genuine issue of material fact for trial.
In this appeal and in its summary judgment briefing, Defendants did not argue that the claimed deprivation of clothing for a two week period was not “sufficiently serious,” or that McDowell failed to present evidence tending to show that prison officials “[knew] of and diregard[ed] an excessive risk to inmate health and safety” created by the claimed deprivation of clothing for two weeks. See Farmer, 511 U.S. at 834, 837, 114 S.Ct. 1970. Moreover, because of its factual finding that McDowell received his clothes one day after the extraction, the District Court did not address these issues. For that reason, we express no opinion with respect to them.
IV.
For these reasons, we will reverse the District Court’s judgment with respect to McDowell’s Eighth Amendment claims and remand for further proceedings.

. The defendants that remain in the lawsuit are Administrator Lydell B. Sherrer, Sergeant Craig Sears, Sergeant David Abdus-Sabur, Senior Corrections Officer (“SCO”) Charlie Wallace, SCO Christopher Carson, SCO Dennis Robinson, SCO Marc Williams, SCO Domingo Rivera, SCO Brian Williams, SCO Kevin Searcy, SCO Arnaldo Belo, SCO Domingo Rivera, Sergeant Cesar De La Cruz, SCO Car-nell Carlrell, SCO Edward Bonet, SCO Ronald Tucker, and SCO Leonard Wheeler.

. When an inmate is outside of his cell under these circumstances, officers perform an "extraction” to return the inmate to his cell. During an extraction, teams of five officers work together to restrain and then secure an inmate's arms and legs. One officer uses a large body shield while the four other officers are responsible for securing each of the inmate's extremities. Here, there was one extraction team per inmate.

. The video recording made by the inmate ends after McDowell and Cruz are restrained and taken off the tier floor.

. Before us, McDowell has not claimed that he was deprived of medical care for a serious medical need for two weeks.

. The District Court did not rely on prison records to support its finding that McDowell received his clothes back on the day after the extraction.