GLD-292                                                    NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1845
_____

DAVID L. MATHIS,
                                    Appellant

v.

JENNIFER MONZA; CAROL STEELE-SMITH;
WILLIAM SCHOPPE; COUNTY OF BEAVER

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2:11-cv-00450)
District Judge:  Honorable Nora B. Fischer

_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
June 20, 2013

Before: FUENTES, FISHER and VANASKIE, Circuit Judges

(Opinion filed: July 8, 2013)
_____

OPINION
_____

PER CURIAM

     David Mathis appeals from the District Court's orders granting the defendants'

partial motion to dismiss and their motion for summary judgment.  Because the appeal

does not present a substantial question, we will summarily affirm the District Court's judgment.  See 3d Cir. L.A.R. 27.4; I.O.P. 10.6.

I.

Mathis was transferred to the Beaver County Jail for pretrial detention on February 11, 2011.  The United States Marshals advised jail officials that Mathis' charges included escape and that he had previously attempted to escape from a correctional institution. Monza, the Classification Coordinator, identified Mathis as an escape risk and designated him to the Restricted Housing Unit ("RHU").

Approximately a week later, a staff member informed Mathis that only religious materials were allowed in the RHU.  Mathis verified this information by requesting a Bible from the chaplain, which he received the following day.  Mathis also requested a list of property permitted in the RHU, and the list stated that RHU inmates were allowed, inter alia, only one book of a religious nature and that any other items not on the list would be considered contraband and confiscated.

On March 3, 2011, Mathis filed a grievance seeking the same benefits given to female RHU inmates and other pretrial administrative custody inmates, such as hot meals.  Monza denied his request.  Mathis re-filed his grievance the following day.  On March 14, 2011, Steele-Smith granted Mathis access to the law library but denied him all other requested benefits.

A month later, Mathis requested that he be transferred to the Special Needs Unit ("SNU") because of the sleep deprivation, mental cruelty, and exhaustion he was experiencing in the RHU. Steele-Smith denied his request. Mathis then wrote to the United States Marshals asking to be transferred, and he was removed from the jail on April 22, 2011.

Mathis filed a complaint pursuant to 42 U.S.C. §, alleging violations of his equal protection, First Amendment, and due process rights. In January 2012, the District Court granted the defendants' partial motion to dismiss Mathis' equal protection and First Amendment Establishment Clause claims concerning the providing of religious texts and visits from religious advisers. Subsequently, the District Court granted the defendants' motion for summary judgment on Mathis' remaining claims. This appeal followed.

## II.

We have jurisdiction over the District Court's orders. 28 U.S.C. § 1291. We exercise plenary review over both the District Court's partial dismissal and its grant of summary judgment to the defendants. See Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009); Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Summary judgment is appropriate only when the "movant shows that there is no genuine dispute as to any

3

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We may summarily affirm on any basis supported by the record. Murray v. Bledsoe, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam).

III.

In his complaint, Mathis alleged that the jail violated his First Amendment rights to freedom of speech and the press by not allowing male RHU inmates to possess reading material "from any source." While inmates retain the "protections afforded by the First Amendment," O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (citation omitted), they "retain[] only those First Amendment rights that are not inconsistent with [their] status as [] prisoner[s] or with the legitimate penological objectives of the corrections system," Pell v. Procunier, 417 U.S. 817, 822 (1974). To determine whether a regulation infringing upon constitutional rights is reasonable, courts apply the four factors set forth in Turner v. Safley, 482 U.S. 78 (1987). These factors require courts to consider: (1) "whether the regulation bears a 'valid rational connection' to a legitimate and neutral government objective;" (2) "whether there are alternative means of exercising the right that remain open to prison inmates;" (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally;" and (4) "the absence of ready alternatives." Id. at 89-90; see also Fraise v. Terhune, 283 F.3d 506, 513-14 (3d Cir. 2002) (citations omitted).

4

As an initial matter, Mathis was permitted to have a religious text as well as legal mail and personal correspondence, except for magazines and books. Nevertheless, we agree with the District Court that the jail's policy prohibiting RHU inmates from possessing non-religious reading material satisfies Turner. The record reflects that the jail's policy furthers its interest in promoting the modification of RHU inmates' behavior so that they have incentive to follow jail rules and regulations. See Beard v. Banks, 548 U.S. 521, 530-31 (2006) (determining that policy prohibiting Long Term Segregation Unit inmates from possessing newspapers and magazines served to motivate better behavior). To avoid equal protection problems, the jail cannot distinguish between inmates placed in the RHU for disciplinary infractions and inmates placed there on administrative segregation status. Furthermore, although RHU inmates have no alternative to exercise their right, their right has not been completely eliminated, as Mathis himself was advised that he could be moved to a less restrictive unit allowing leisure reading materials if he resolved his escape risk designation with the Marshals. See Turner, 482 U.S. at 89-90; see also Beard, 548 U.S. at 532. Finally, the record reflects that without the policy, more prison resources would be expended in an attempt to modify inmates' behavior, and that there is no alternative method that would accommodate this right at de minimis cost to the jail's penological interests. See Turner, 482 U.S. at 90-91. Accordingly, summary judgment was warranted for the defendants on Mathis' claim that his rights to freedom of speech and the press were violated.

5

Mathis also claimed that the jail's policy of allowing RHU inmates to possess religious texts while prohibiting them from possessing non-religious texts and allowing RHU inmates to receive visits from religious advisers violates the First Amendment's Establishment Clause and his equal protection rights. However, it appears that Mathis is not raising a true Establishment Clause claim, as he does not take issue with the jail's allowance of religious texts and visitors and does not allege that he is in any way religious or non-religious. Rather, he believes that RHU inmates should be allowed to possess both religious and non-religious reading material and should be allowed to receive extra visits from individuals who are not religious advisers. "Turner is equally applicable" to Mathis' claims. DeHart v. Horn, 227 F.3d 47, 61 (3d Cir. 2000). An inmate "cannot obtain relief if the difference between the defendants' treatment of him and their treatment of [inmates of another religion] is 'reasonably related to legitimate penological interests.'" Id. However, as we noted above, the jail's policy prohibiting RHU inmates from possessing non-religious reading material and from receiving extra visits serves the penological purpose of promoting the modification of behavior. See Turner, 482 U.S. at 89-90; see also Beard, 548 U.S. at 530-31. Accordingly, the District Court properly determined that Mathis' claims were meritless.

According to Mathis, the defendants violated his equal protection rights by serving hot meals to female RHU inmates while only serving bagged meals to male RHU inmates. The record contains evidence that male RHU inmates used to receive hot meals,

6

but that they began to use the trays and utensils as weapons. The jail did not experience the same problems with female RHU inmates. For safety purposes, the jail began serving bagged meals only to male RHU inmates. Accordingly, we agree that this difference in treatment bears a "'valid rational connection' to a legitimate and neutral government objective."[1] Turner, 482 U.S. at 89.

Finally, we agree that Mathis' pretrial confinement in the RHU did not violate his substantive due process rights, as nothing in the record suggests that this placement was punitive. See Bell v. Wolfish, 441 U.S. 520, 535 (1979). Given Mathis' classification as an escape risk, his detention in the RHU was reasonably related to the jail's legitimate interest in maintaining security. See Block v. Rutherford, 468 U.S. 576, 586 (1984); Stevenson v. Carroll, 495 F.3d 62, 68 (3d Cir. 2007). Likewise, Mathis' claim that the defendants violated his equal protection rights is meritless, as the record is devoid of any evidence that the defendants purposefully discriminated against Mathis by placing him the RHU.[2] See Andrews v. City of Phila., 895 F.2d 1469, 1478 (3d Cir. 1990).

IV.

---

[1] While prisoners must receive a nutritionally adequate diet, see Ramos v. Lamm, 639 F.2d 559, 571 (10th Cir. 1980), Mathis has no constitutional right to hot meals, see Brown-El v. Delo, 969 F.2d 644, 648 (8th Cir. 1992) (finding frivolous prisoner's claim that his constitutional rights were violated when he was served cold food).

[2] We further agree that Mathis failed to establish that the inmate convicted of escape was similarly situated to him. The other inmate walked away while working outside of the jail as part of the Community Work Program. He was found guilty of a disciplinary violation and was sent to the RHU. After serving his time in the RHU, he was transferred to the general population unit. Unlike this inmate, however, Mathis was designated as an escape risk upon arrival at the jail and had an admitted history of attempted escape.

For the foregoing reasons, we will summarily affirm the District Court's

judgment.  <u>See</u> 3d Cir. L.A.R. 27.4; I.O.P. 10.6.