**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 14-4702

———————————

CHRISTINA PAOLI,
also known as Christina Daum,

Appellant

v.

STETSER, Trooper; LAYFIELD, Corporal; ROWLEY, Trooper;
RALSTON, Corporal; CARLYLE, Corporal; O'NEIL, Trooper;
WARRINGTON, Corporal; BARNETT, Sergeant; WHALEY, Retired Sgt.;
HARDY, Retired Lt.; DIXON, Captain; DELAWARE STATE POLICE TROOP 7

———————————

On Appeal from the United States District Court
for the District of Delaware
(D. C. Civil Action No. 1-12-cv-00066)
District Judge:  Honorable Gregory M. Sleet

———————————

Submitted under Third Circuit LAR 34.1(a)
on February 12, 2016

Before: FUENTES, KRAUSE and ROTH, <u>Circuit Judges</u>

(Opinion filed: June 8, 2016)

———————————

OPINION[*]

———————————

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

ROTH, Circuit Judge

A series of encounters with the Delaware State Police prompted Christina Paoli to file a civil rights action against a group of officers. The District of Delaware granted summary judgment in favor of all defendants. Paoli now appeals from the grant of summary judgment against one of the defendant officers. We will affirm.

**I.**

On March 5, 2011, Delaware State Trooper Ashley Stetser responded to a call related to a dispute in Unit 303 of the Summerlyn Condos in Lewes, Delaware. Trooper Stetser made contact with Paoli as well as three men, who, Stetser learned, had sub-leased Unit 303 from Paoli. Stetser heard Paoli make harassing comments to the three men and attempt to engage in verbal confrontations with them. Paoli refused to stop harassing the men. Stetser arrested Paoli for harassment in violation of 11 Del. C. § 1311. He transported Paoli to a Justice of the Peace, where she was arraigned and ordered to have no contact with the residents of Unit 303.

Two days later, Delaware State Police were informed that Paoli had violated the No Contact Order, a misdemeanor in Delaware. Acting pursuant to a warrant for Paoli's arrest, Trooper Joshua Rowley was dispatched to the Summerlyn Condos to assist in apprehending Paoli. At the Condos, Rowley learned that Paoli had fled from her condo at Unit 305 to the north parking lot at the complex. While officers searched the condominium complex, Paoli made a phone call to 911 and spoke to a dispatcher. Radio dispatch advised the officers in the area that Paoli was making this call, and dispatch traced Paoli's location to the north parking lot. Based on this information, Trooper

2

Rowley approached a motor home in the complex's north parking lot. According to Paoli's complaint, all of the windows of this motor home were covered and all of the doors were locked. Trooper Rowley claims that one of the doors was open and he could see inside. Rowley also claims to have heard movement inside the motor home. Based on these observations, Rowley was directed by his supervisor to enter the motor home. He did so, and Paoli was inside, at which point other officers made an arrest.

Paoli, acting pro se, filed an action pursuant to 42 U.S.C. § 1983 against Delaware State Police Troop 7 and eleven individual officers at the scene for civil rights violations stemming from this arrest. All defendants moved for summary judgment. The Magistrate Judge assigned to the case issued a report recommending that summary judgment be entered for all defendants except for Trooper Rowley, who filed timely objections to the report. The District Court sustained Rowley's objections and adopted the remainder of the report, entering summary judgment for all defendants. Paoli appeals the grant of summary judgment in favor of Rowley only.

## II.[1]

Paoli alleges that Trooper Rowley's entry into the motor home where she was found was an unreasonable search or seizure. Rowley responds that this entry was not unreasonable, and in the alternative, that he is entitled to qualified immunity. The

---

[1] The District Court had jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343. We exercise jurisdiction pursuant to 28 U.S.C. § 1291. Our review of a district court's decision to grant summary judgment is plenary. *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009).

District Court concluded Rowley would be entitled to summary judgment on either of these grounds.

Qualified immunity bars claims against government officials "as long as those officials' actions 'd[id] not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[2] Thus, a court ruling on qualified immunity must decide two issues: (1) whether the facts alleged, taken in a light most favorable to the plaintiff, show a violation of a constitutional right, and (2) whether such right was clearly established in light of the specific factual context.[3] The court may decide the question of whether there was a "clearly established right" without first determining if a violation of a constitutional right occurred.[4] We will first consider whether Paoli has asserted a right that was clearly established.

### A.

The "clearly established" right Paoli seeks to have vindicated is the Fourth Amendment right to be free from unreasonable searches and seizures.[5] However, whether a right has been "clearly established" depends on "the specific context of the case," and the right at issue may not be simply "a broad general proposition."[6] For a right to be "clearly established," the contours of the right must be sufficiently clear that a

---

[2] *Burns v. Pa. Dep't Corr.*, 642 F.3d 163, 176 (3d Cir. 2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) (alteration in original).
[3] *Saucier v. Katz*, 533 U.S. 194, 201 (2001).
[4] *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).
[5] U.S. Const. amend. IV.
[6] *Saucier*, 533 U.S. at 201.

reasonable official would know that his conduct violates that right.[7]  Thus, Paoli must demonstrate that a specific Fourth Amendment right—not merely a general right against unreasonable searches and seizures—was clearly established at the time of the alleged violation, based on the specific context of her case.

The circumstances set forth in Paoli's complaint are straightforward: Trooper Rowley, acting pursuant to a valid arrest warrant for Paoli, entered a motor home in search of Paoli.  Less straightforward is the law governing the reasonableness of this entry.  It is well-settled that "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within."[8]  If an officer does not have reason to believe a suspect resides at the dwelling to be searched, he may not enter the home to effect an arrest without obtaining a search warrant for the home in the absence of exigent circumstances.[9]

Here, however, there is a question whether we are dealing with a dwelling or a motor vehicle.  Paoli acknowledges that when she was arrested, she was in a "motor home."  The Supreme Court has held that if a motor home is being used as a vehicle, rather than a residence, the expectation of privacy is diminished because of the "ready

---

[7] *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).
[8] *Payton v. New York*, 445 U.S. 573, 603 (1980).
[9] *See United States v. Vasquez-Algarin*, --- F.3d --- (3d Cir. 2016) (requiring officers to have reason to believe that an arrestee lives in the residence subject to a *Payton* search and otherwise treating the home as a third party's home); *see also Steagald v. United States*, 451 U.S. 204 (1981) (requiring a search warrant to search for subject of arrest warrant in a third party's home).

mobility" and the lower expectation of privacy with respect to a motor vehicle.[10]  The motor home was located in the Condo Complex's  parking lot, not in a trailer park with other motor homes.  There was no indication that it was being used as a residence rather than a vehicle.  Rowley was told by radio dispatch that this suspect's location had been traced to the north parking lot, where the motor home was located.  As the District Court found on reviewing the undisputed evidence, Rowley also heard noises from inside the motor home.  Because of the location from which Paoli had made the call and the noise from within the motor home, Rowley had probable cause to believe that Paoli was inside it and he had a warrant for her arrest.

Qualified immunity exists to give "government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law."[11]  Trooper Rowley was acting under the direction of a superior officer in an attempt to apprehend a suspect for whom an arrest warrant had been issued after she violated a No Contact Order.  Based on the facts before Rowley at the time, there is no reason to think that he was plainly incompetent or knowingly violating the law.  At the time of Rowley's entry, he could not ascertain if this "motor home" qualified as a dwelling or a motor vehicle.  He certainly had reason to believe that the motor home might be driven away by Paoli.  Because of this gray area between motor vehicles and dwellings, we hold that Paoli has not articulated a violation of a clearly established right.

---

[10] California v. Carney, 471 U.S. 386, 393 (1985).

[11] *Id.* (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 2085 (2011)).

**B.**

Because Paoli's rights were not clearly established at the time of Rowley's entry, we need not determine whether Rowley's entry was unreasonable. We therefore conclude that Rowley is entitled to qualified immunity, and we will affirm the District Court's grant of summary judgment.