BLD-263                                                    NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1283
_____

JOSEPH LAURENSAU,
                                                 Appellant

v.

SAMUEL ROMAROWICS, CO III; MR. BARKLEY, CO 1, Property SMU;
VINCENT KNIZER, CO II; MR. J. JOHNSON, CO I; FRANK LEWIS, Chaplain
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2:11-cv-01054)
Magistrate Judge:  Honorable Maureen P. Kelly
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
May 31, 2013

Before:  SCIRICA, HARDIMAN and GREENAWAY, JR., Circuit Judges

(Opinion filed: June 13, 2013)
_____

OPINION
_____

PER CURIAM

        Joseph Laurensau, a Pennsylvania inmate, appeals from the District Court's order

granting the defendants' motion for summary judgment.  Because this appeal does not

present a substantial question, we will summarily affirm the District Court's judgment. See 3d Cir. L.A.R. 27.4, I.O.P. 10.6.

I.

Because we write primarily for the parties, we need only recite the background necessary for our discussion, and we have based the following on both Laurensau's allegations and the defendants' uncontested counter-assertions. In 2009, while incarcerated at SCI Fayette, Laurensau was granted an accommodation for a Kosher diet. On April 21, 2009, he submitted a request that he be taken off the Kosher diet because of "inadequate starch;" however, he did not sign a formal release from the accommodation. Despite receiving warnings, Laurensau took at least two non-Kosher meals. Knizer issued him a notice of non-compliance with the religious dietary accommodation rules.

Also in the spring of 2009, Laurensau ordered 24 erotic photographs and three "art books." The photographs were delivered but were placed with his stored property because of limitations on the number of photographs allowed at one time in a Restricted Housing Unit ("RHU") cell. Officers informed Laurensau of the location of the photographs and of the procedure he needed to follow to exchange photographs in his cell with those placed in storage. The "art books" were returned to the vendor because they were disallowed by SCI Fayette officials.

Laurensau further alleges that on August 28, 2009, he received a Kosher bag with crushed graham crackers, no saltine crackers, and cottage cheese with saliva and chewing tobacco in it. He dumped the cottage cheese on the floor, shoved it under his cell door,

2

and began to wash it away with water. Barkley observed the water and began to shut off the water supply. Laurensau then threw toilet water out of his cell, striking Barkley. He was removed from his cell in a cell extraction, during which his glasses were taken as a safety precaution, and placed in disciplinary custody. His glasses were returned to him following the cell extraction. Laurensau was subsequently found guilty of assault and tampering with property. He received 90 days of disciplinary custody and alleges that he was placed on a behavior modified meal for three days and was denied outdoor exercise and showers for seven days. He was officially removed from the kosher diet on September 1, 2009.

## II.

We have jurisdiction under 28 U.S.C. § 1291 and exercise plenary review over the District Court's grant of summary judgment. See Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009). Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We may summarily affirm on any basis supported by the record. Murray v. Bledsoe, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam).

## III.

Laurensau first alleges that his First Amendment rights to free exercise of religion were violated when officials discontinued his Kosher meals. It is undisputed that Laurensau requested to be taken off the Kosher diet because he thought that it contained inadequate starch; however, he was not removed from the diet because he did not submit

3

his request on the proper form. The record further shows that, on at least two occasions, Laurensau took a regular tray despite his continued participation in the Kosher diet. Given that Laurensau failed to comply with the Kosher diet, the District Court properly concluded that he had not demonstrated a "sincerely held" belief entitled to constitutional protection.[1] DeHart v. Horn, 227 F.3d 47, 51 & n.3 (3d Cir. 2000).

Laurensau also alleges that his First Amendment rights were violated when the defendants retaliated against him for filing grievances regarding his missing mail and the inadequacy of his Kosher diet. As an initial matter, filing grievances qualifies as constitutionally protected conduct. See Milhouse v. Carlson, 652 F.3d 371, 373-74 (3d Cir. 1981); see also Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (first prong of a retaliation claim requires plaintiff to show that he engaged in constitutionally protected conduct). However, nothing in the record suggests that Laurensau's grievances were a "substantial or motivating factor" for many of his allegations of retaliation. See Rauser, 241 F.3d at 333. Instead, the evidence demonstrates that Laurensau was removed from the Kosher diet because of his own decision to take a regular tray on at least two occasions, that his eyeglasses were removed for safety precautions during a cell extraction and returned following the extraction, and that his photographs were placed

---

[1] Although we are not required to reach this issue given our conclusion that Laurensau failed to demonstrate a "sincerely held" belief, we agree with the District Court's alternate conclusion that the defendants' conduct in removing Laurensau from the Kosher diet was reasonable under the factors set forth in Turner v. Safley, 482 U.S. 78, 89-90 (1987). See DeHart, 227 F.3d at 51(noting that courts need not conduct a Turner analysis if a "sincerely held" religious belief is not demonstrated).

with his stored property because of regulations governing the number of possessions allowed in his RHU cell. Furthermore, evidence that Laurensau assaulted Officer Barkley shows that Laurensau would have been charged regardless of any protected activity. See id. at 334; see also Carter v. McGrady, 292 F.3d 152, 159 (3d Cir. 2002) (affirming summary judgment in favor of defendants when "the quantum of evidence concerning the prisoner's misconduct showed that he would face disciplinary action regardless of his protected activity).

Laurensau also alleges several violations of his Eighth Amendment rights. As an initial matter, his complaints regarding behavior modified diets, showers, and exercise do not rise to the level necessary to form the basis of Eighth Amendment violations. See, e.g., LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993) (use of a "temporary Nutraloaf diet does not deny 'the minimal civilized measure of life's necessities'"); Knight v. Armontrout, 878 F.2d 1093, 1096 (8th Cir. 1989) (denial of outdoor exercise for thirteen days did not violate the Eighth Amendment); Davenport v. DeRobertis, 844 F.2d 1310, 1316 (7th Cir. 1988) (limiting inmates to one shower a week does not violate the Eighth Amendment). Furthermore, the District Court properly granted summary judgment to the defendants on Laurensau's claim that his rights were violated by the contamination of his food, as the record is devoid of evidence that the defendants

consciously knew of and disregarded an excessive risk to Laurensau's health.[2]  See

Farmer v. Brennan, 511 U.S. 825, 840-44 (1994).

We have carefully considered Laurensau's claims regarding the confiscation of his

property and conclude that they are meritless.  Laurensau's claim that his Fourth

Amendment rights were violated by an allegedly unconstitutional seizure of his property

is meritless, as "the Fourth Amendment's prohibition on unreasonable searches does not

apply in prison cells."  Hudson v. Palmer, 468 U.S. 517, 530 (1984).  Furthermore, to the

extent that Laurensau alleges that his due process rights were violated by the confiscation

of his property, he has an adequate post-deprivation remedy in state tort law.[3]  See id.,

468 U.S. at 533; see also 42 Pa. Cons. Stat. Ann. § 8522(a), (b)(3) (common law action

for conversion); Tillman v. Lebanon Cnty. Corr. Facility, 221 F.3d 410, 422 (3d Cir.

---

[2] Laurensau also claims that Officers Romarowicz and Knizer's failure to supervise their subordinates or inmate workers led to the contamination of his food.  To the extent that his claim is based upon a theory of respondeat superior, it is barred.  See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998).  A supervisor can be held individually liable if his failure to properly train or supervise a subordinate caused a deprivation of the plaintiff's constitutional rights.  Andrews v. Fowler, 98 F.3d 1069, 1078 (8th Cir. 1996).  However, a plaintiff must demonstrate that the supervisor's failure to train amounted to "deliberate indifference" and that the failure to train was closely related to the plaintiff's injury.  City of Canton v. Harris, 489 U.S. 378, 389, 391 (1989).  Nothing in the record suggests that Romarowicz and Knizer were deliberately indifferent.

[3] We further agree with the District Court's alternate conclusion that Laurensau failed to exhaust his administrative remedies for his claim regarding his missing property, as required under the Prison Litigation Reform Act ("PLRA").  See 42 U.S.C. § 1997e(a).  Although Laurensau filed three grievances regarding his mail, he did not pursue them through final appeal as set forth in the Department of Corrections' grievances procedures.  See Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007) (prisoner must comply with all administrative requirements).

2000) (Pennsylvania Department of Corrections grievance procedure provides adequate post-deprivation remedy).

We also agree with the District Court that Laurensau's claims that the defendants conspired with inmate Feola to contaminate his food and also conspired to remove him from the Kosher diet are meritless. To demonstrate the existence of a conspiracy under § 1983, "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law." Parkway Garage, Inc. v. City of Phila., 5 F.3d 685, 700 (3d Cir. 1993), abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392 (3d Cir. 2003). Our review of the record confirms that it supports neither Laurensau's allegations of an agreement between Feola and the defendants nor his allegations that the defendants agreed to violate his rights by removing him from the Kosher diet.

IV.

For the foregoing reasons, no substantial question is presented and we will affirm the judgment of the District Court. See 3d Cir. L.A.R. 27.4; I.O.P. 10.6.