**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3865
_____

I-KIEM SMITH,
Appellant

v.

LT. J. PRICE; SGT. M. SHEETZ; CO S. CRAMER; C.O. 1 R. HARPER; C.O. 1
J. KENNEDY; C.O. 1 A. HARPSTER; B. HARRINGTON,
a/k/a B. Herrington; DR. DREIBELBIS, Correctional Healthcare Administration;
JOHN DOE, Physician Assistant; C. MITCHELL, Hearing Examiner;
SUPERINTENDENT J. D. FISHER; LIEUTENANT J. LEAR;
CO R. WERTZ; CLAOR; A. VOGT; ASHLEY; HOZLETT; CLAPPER;
LT. J. ELCHENLOUB; CAPT. GROVE
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 3-11-cv-01581)
District Judge:  Honorable Edwin M. Kosik
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 15, 2015
Before:  FISHER, KRAUSE and VAN ANTWERPEN, Circuit Judges

(Opinion filed:  April 21, 2015)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

PER CURIAM

I-Kiem Smith, a Pennsylvania inmate proceeding pro se and in forma pauperis, appeals from the District Court's order granting summary judgment to the defendants on his 42 U.S.C. § 1983 complaint. For the reasons set forth below, we will affirm in part and vacate in part the District Court's order and remand for further proceedings.

I.

On February 17, 2011, correctional staff at the State Correctional Institute in Smithfield, Pennsylvania, used force against Smith twice. The first incident occurred after Smith's exercise period when, for reasons the parties dispute, several guards grabbed Smith and pressed him against an exercise pen. The second incident occurred shortly thereafter when the guards were escorting Smith back to his cell. For reasons that are again disputed, several guards forced Smith to the ground and struggled to shackle and restrain him. Prison video cameras recorded both incidents from multiple angles, but the recordings are silent and do not show everything. After the incidents, two of the defendants filed misconduct reports against Smith for resisting them. Smith was found guilty of one of the misconducts; the other was dismissed as duplicative.

Smith then commenced the foregoing § 1983 action, alleging excessive force, retaliation, deliberate indifference to his medical needs, and due process violations against numerous defendants. On the defendants' motion, the District Court dismissed many claims and defendants, leaving only Smith's excessive force and retaliation claims

2

against the defendants that used force on him and his retaliatory discipline claims against defendants Harper and Lear.

After discovery, the remaining defendants moved for summary judgment. The Magistrate Judge recommended granting summary judgment, primarily based on the video evidence. The District Judge agreed and granted summary judgment to the defendants. Smith timely appealed.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291, and we exercise plenary review over a District Court's decision to grant summary judgment. Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009). Summary judgment is appropriate when the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, in a case such as this one, where there are video recordings of the incidents in question, we need not adopt the non-movant's version of the facts if the recordings "blatantly contradict[]" the non-movant's version "so that no reasonable jury could believe it." Scott v. Harris, 550 U.S. 372, 380 (2007).

In his appellate brief, Smith limits his arguments to his excessive force claims. To recover on a claim of excessive force under the Eighth Amendment, a plaintiff must show that his treatment amounted to an "unnecessary and wanton infliction of pain." Whitley

3

v. Albers, 475 U.S. 312, 320 (1986). Whether the use of force rises to such a level is determined by "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Hudson v. McMillian, 503 U.S. 1, 6 (1992) (quoting Whitley, 475 U.S. at 320-21). In resolving this question, a court must evaluate "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response." Giles, 571 F.3d at 326. "Force that exceeds that which is reasonable and necessary under the circumstances is actionable." Id. at 328.

Smith contends that the defendants' uses of force were sadistic and malicious because they were unprovoked and unjustified. Although video evidence portrays the incidents, he argues that it does not blatantly contradict his account, and that the District Court erred by construing the evidence in favor of the defendants. In other words, Smith argues that the District Court took the exception in Scott too far. After careful review of the video evidence, we disagree with Smith as to the first incident, but agree as to the second.

The two videos of the first incident begin with Smith exercising alone in his exercise pen. They then show defendant Price approach Smith's pen, and the two appear to engage in a discussion, the content of which is disputed and not resolved by the silent

4

videos. Several other guards arrive and, after additional discussion, one of the guards handcuffs Smith through the pen door. As the same guard prepares to open the door, Smith's side faces the door. Another guard then speaks to Smith and points to the back of the pen, after which Smith moves so that his back faces the pen door. A guard then opens the door and, while exiting, Smith turns to face the guards and steps toward them. Several guards then push Smith into the opposite pen gate, where they hold him still for several seconds before releasing pressure and leading him down the corridor to his housing unit.

The defendants contend they used force on Smith because, by turning to face and step towards them, he violated prison rules and orders to exit the pen backwards. Smith contends no such rule exists and that he received no such orders, but the evidence as a whole clearly contradicts his contentions. First, the Restricted Housing Unit ("RHU") handbook states that inmates are to face away from the cell door before exiting and that they will be backed out of the cell. Smith contends that this applies to cells, not exercise pens, but additional video evidence Smith submitted of other inmates exiting an exercise pen blatantly contradicts this assertion. In it, before exiting the exercise pen, two inmates stand with their backs to the pen door. Once the pen door is opened, the inmates are slowly backed out of the pen one at a time. Further, in the video of Smith's own exit, immediately before the door was opened, a guard makes a statement to Smith and points to the back of the pen, after which Smith stands with his back to the pen door. This video evidence confirms the defendants' assertions that inmates are to exit the exercise pen

backwards and blatantly contradicts Smith's assertions otherwise. It also shows that the defendants used limited force to restore discipline, not cause harm, and thus the District Court correctly concluded that the force used was not excessive under the Eighth Amendment. See Hudson, 503 U.S. at 6.

As to the second incident, however, the evidence is not so clear. The defendants contend they forced Smith to the ground because he removed or attempted to remove his left handcuff. Smith disputes these assertions and contends that the defendants forced him to the ground without a valid justification and to cause harm. The video evidence does not resolve this key question. It does not show Smith remove or attempt to remove his left handcuff; indeed, it does not show Smith's left hand or arm free at any point. All the video shows on this point is that Smith's left arm moves slightly upward immediately before the guards forced him to the ground, but it is not clear whether the guard holding Smith's left arm or Smith caused this motion.

After Smith is forced to the ground, the incident becomes even less clear. Smith's body is covered with guards, and rapid movements make it difficult to discern exactly what occurred. Further, at several points the view is blocked by guards standing or walking around Smith. Smith contends the guards exacted gratuitous violence during this struggle, including hitting his face into the floor, punching him, rubbing his face in blood, jumping on him, putting extreme pressure on his neck, and generally beating his body. The defendants deny these assertions and contend that the video evidence blatantly contradicts them.

6

Reviewed carefully, the videos show one guard forcefully press Smith's face on the ground at least twice. The videos also show upper body movement by other guards, though that movement is largely obscured. At one point, a guard places a jacket on the ground near Smith's face. After Smith is escorted out, this jacket remains and appears blood stained. Smith's neck is not visible in the videos of the encounter, as moving guards cover his upper body throughout the video's duration. Given how little can be ascertained from the video, it cannot be said that the record "blatantly contradict[s]" Smith's allegations that the guards placed repeated, excessive pressure on his neck and rubbed his face in blood. Thus, the exception in Scott, 550 U.S. at 380, to the normal requirement to view the evidence in the light most favorable to the non-moving party does not apply. Accepting Smith's version of the facts, the defendants forced him to the ground while handcuffed and gratuitously assaulted him without provocation or cause. Accordingly, as to the second incident, he has raised a genuine dispute of material fact that precludes summary judgment on his excessive force claim. See Hudson, 503 U.S. at 5-6; Brooks v. Kyler, 204 F.3d 102, 107 (3d Cir. 2000).

### III.

Smith has not raised any arguments as to his retaliation claims. Accordingly, we deem that issue waived and will affirm the District Court's grant of summary judgment on his retaliation claims. See Kost v. Kozakiewicz, 1 F.3d 176, 182 (3d Cir. 1993) (noting that issues not raised on appeal are generally deemed abandoned and waived). That said, although Smith did not discuss qualified immunity, our holding as to his

7

excessive force claim necessarily undermines the District Court's qualified immunity ruling. The Supreme Court has "mandated a two-step sequence for resolving . . . qualified immunity claims." Pearson v. Callahan, 555 U.S. 223, 232 (2009). First, courts must determine whether the defendant's alleged or proven conduct violated the plaintiff's constitutional rights. Id. If so, then courts must determine whether this conduct violated rights that were clearly established at the time of the incident. Id. The District Court found the defendants did not violate Smith's constitutional rights, and thus it granted qualified immunity without proceeding to the second step. Because we find that the defendants involved in the second incident are not entitled to summary judgment on Smith's excessive force claim, we must vacate this conclusion in part. On remand, the District Court should determine in the first instance whether the defendants are nonetheless entitled to qualified immunity under the second step. Cf. Estate of Smith v. Marasco, 318 F.3d 497, 511 (3d Cir. 2003). Although, as noted, the video evidence is not entirely clear, the District Court should, to the extent possible, analyze the specific conduct of each defendant in its qualified immunity analysis, rather than the defendants as a whole. See id. Accordingly, we will vacate the District Court's qualified immunity ruling, but only as to Smith's claim of excessive force in the second incident.

## IV.

For the foregoing reasons, we will affirm in part, vacate in part, and remand the case to the District Court for proceedings consistent with this opinion.

8