DLD-038                                                          NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2375
_____

KAREEM ARMSTRONG,
Appellant

v.

SECRETARY PENNSYLVANIA DEPARTMENT OF CORRECTIONS;
BRIAN V. COLEMAN; ERIC JOHNSON; JARED ANKROM;
RICK VOYTKO; LISA DUNCAN; NELIGH; HUSARCHIK
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2-13-cv-01300)
Magistrate Judge:  Honorable Lisa P. Lenihan
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
November 5, 2015
Before:  CHAGARES, GREENAWAY, JR. and SLOVITER, Circuit Judges

(Opinion filed: December 4, 2015)
_____

OPINION*
_____

PER CURIAM

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Kareem Armstrong appeals from on order of the United States District Court for the Western District of Pennsylvania, which granted the Defendants' summary judgment motion in his civil rights action. We will dismiss Armstrong's appeal as frivolous. See 28 U.S.C. § 1915(e)(2)(B)(i).

Because the history and facts of the case are thoroughly reviewed in the District Court's well-reasoned opinion, we will recount the events in summary fashion. Armstrong's amended complaint alleged that various correctional officers and prison officials violated his Eighth Amendment right to be free from cruel and unusual punishment when they failed to protect him from an October 31, 2012 assault by his cellmate, James Copeland.[1] Armstrong alleged that he had informed several of the Defendants that he was homosexual, that he wanted to have sex with other men, and that he had received two misconducts for indecent exposure in double cells. The complaint alleged that he informed Defendants that due to his sexual preferences, he was required to have a single cell.[2] Armstrong alleged that Copeland threatened to assault him because of his sexual preferences, and that Copeland beat him on October 7 and again on October 28 until he was unconscious. Armstrong alleged that he reported these incidents to Eric

---

[1] Copeland and Armstrong had agreed to be celled together.

[2] Armstrong had been transferred into SCI-Fayette from another prison in August 2010, and initially was assigned Z Code (single-cell) status. The status was not based on his alleged sexuality—he did not advise anyone that he was homosexual until after a staff review at SCI-Fayette the following Spring determined that single-cell status was no longer necessary.

Johnson (Armstrong's Unit Manager at the time of the incident), but that Johnson did not respond. Armstrong alleged that Copeland assaulted and "water-boarded" him on October 31 because he did not want a homosexual cellmate.

The Defendants filed a motion for summary judgment. They argued that several of the Defendants had no personal involvement with the decision to house Armstrong with Copeland, and that the complaint did not allege that Armstrong relayed to most of the Defendants that he had any problems with Copeland. The Defendants acknowledged, however, that it might appear that there was a genuine issue of material fact regarding whether Armstrong communicated the alleged threats and assaults to Defendants Johnson and Timothy Neligh (a Corrections Officer)--Armstrong stated that he reported specific incidents to Johnson and Neligh, while Johnson and Neligh prepared declarations stating that he did not do so. But the Defendants argued that the allegations of the Amended Complaint could not create a material dispute of fact, because other evidence in the record, uncovered by the prison's investigation of the October 31 assault, showed that the assault had been staged so that the two inmates could obtain single-cell status.

Most tellingly, the Defendants produced a letter that Armstrong wrote to his brother less than a month after the October 31 incident. In the letter, Armstrong denied that he was homosexual, indicated that he got naked in front of other inmates twice in order to try and get his Z-Code status back, and noted that he and his cellmate had "just pulled a stunt." Dkt. #52-1 at 68-69. In addition, Defendants produced evidence of telephone calls that Copeland made to a woman named Darlene Pacecraft just before the

3

October 31 incident. In the first call, made on October 22, Copeland told Pacecraft that once "this" happens, he would "get 90 days to 6 months in the hole." Dkt. #52-2 at 36. In a second call on October 30, Copeland told Pacecraft that he would not be able to talk to her for a while, and she said she understood. In response to her question, he told her that he would still get commissary but that it would be a little different. Id.

Armstrong opposed the summary judgment motion, but he did not address the allegations that the assault had been staged. The District Court granted the Defendants' summary judgment motion, holding that "no reasonable jury could return a verdict for [Armstrong]," and that "[i]nstead, evidence of record overwhelmingly establishes that Defendants were unaware of any particular threat or harm posed by Copeland, and that the attack by Copeland was staged." Dist. Ct. Op. at 16.

Armstrong appeals pro se and, having granted him leave to proceed in forma pauperis, we must determine whether this appeal is frivolous. See 28 U.S.C. § 1915(e)(2)(B)(i). An appeal is frivolous when it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). There is no arguable basis to challenge the District Court's order granting summary judgment.[3] Summary judgment is appropriate when the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

---

[3] The parties consented to jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c)(1). See Dkt. ##41, 43. We have jurisdiction under 28 U.S.C. § 1291 and exercise plenary review over the District Court's grant of summary judgment. See Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009).

Summary judgment is appropriate if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

While we, like the District Court, credit the evidence of the non-movant (Armstrong) and draw all justifiable inferences in his favor, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), Armstrong failed to produce any credible evidence that any of the Defendants were aware of, and deliberately indifferent to, a serious risk that Copeland would harm him. See Farmer v. Brennan, 511 U.S. 825, 834, 837 (1994) (to establish failure-to-protect claim, prisoner must show that: (1) he is "incarcerated under conditions posing a substantial risk of serious harm" and (2) prison officials acted with "deliberate indifference"; i.e., they knew of and disregarded excessive risk to his safety). Even if Johnson and Neligh were aware of Armstrong's allegations that Copeland had harmed him and had threatened to harm him, Armstrong failed to point to any evidence in the record that would countermand the evidence that the October 31 assault was staged. And his bald allegations that he suffered serious physical injuries from the assaults are belied by the record. See Dkt. 52-5 at 43 of 62 (medical record indicating that Armstrong had two 1/4" superficial lacerations, one on the head and one on the bicep, and another 1/8" laceration on his hand); see also Johnson Decl. at ¶ 18 (Dkt. #52-6 at 42 of 58); Neligh Decl. at ¶ 16 (Dkt. #52-6 at 47 of 58).

5

Because there is no arguable basis to challenge the District Court's judgment, we will dismiss the appeal as frivolous.[4]

---

[4] Armstrong's motion for a temporary restraining order and a preliminary injunction, and his motion for appointment of counsel, are denied.