DLD-254                                                    **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1018
_____

FERNANDO REAL,
                                        Appellant

v.

LT. DUNKLE; LT.  MALIK; SGT. CLARK; SGT. MEYERS; CO MURPHY;
HAUSLYAK; GORMLEY; CHAPMAN, CORRECTIONS OFFICER
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 3-11-cv-02071)
District Judge: Honorable Matthew W. Brann
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Under Third Circuit LAR 27.4 and I.O.P. 10.6
May 19, 2016
Before:  CHAGARES, GREENAWAY, JR. and GARTH, <u>Circuit</u> <u>Judges</u>

(Opinion filed: June 16, 2016)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Pro se appellant Fernando Real appeals from the judgment of the United States District Court for the Middle District of Pennsylvania in his 42 U.S.C. § 1983 action. As the appeal does not present a substantial question, we will summarily affirm the decision of the District Court.

I.

Real initiated this § 1983 action in 2011 against various officials from SCI-Mahanoy, alleging that they destroyed his personal and legal property in retaliation against him for filing grievances, and then prevented him from grieving this destruction. According to his amended complaint, he was housed in the Restricted Housing Unit (RHU) at SCI-Mahanoy on November 2, 2009, and was scheduled to be removed from restriction that day and receive his personal property back.[1] That morning, he alleges that Defendant Dunkle, along with two other corrections officers, advised him that he was being transferred to another facility, and when Real asked about his personal and legal property, Defendant Murphy allegedly advised him: "There is a price you pay for filing grievances, you will never see us in court." He alleges that he was then placed in a van, into which Defendants also placed his personal property, and transported to SCI-Coal Township.

Upon his arrival at SCI-Coal Township, he claims that only a portion of his personal property was returned, and that missing items included documents he needed to

_____

[1] Inmates in the RHU are not permitted to retain personal property while housed there.

pursue unrelated constitutional claims against officers, an affidavit from a witness related to Real's criminal case,[2] and various personal property including mail from family members and photographs. He contends that the confiscation caused him to lose potential civil claims and prevented him from filing a PCRA petition based on newly discovered evidence.

Real claims that, after becoming aware of the missing property on December 4, 2009, he "repeatedly submitted grievances concerning the Defendants at SCI-Mahanoy unlawfully destroyed [his] property in retaliation for filing grievances," but "none of [his] grievances were processed or acknowledge[d]." He alleges that he was later advised by a DOC employee that he had to submit documentation with his grievances regarding his loss of property claim to prove that he once possessed the items of his property he contended were missing, but "[s]ince the Defendants destroyed all documentation [he] possessed pertaining to his property, [he] had no documentation to submit [with his grievances] as proof."

The District Court screened Real's complaint under 28 U.S.C. § 1915(e)(2), and on April 23, 2012, it dismissed, with prejudice, his claims for damages against Defendants in their official capacities, his Fourteenth Amendment due process claim, and his § 1981, § 1985(3), and § 1986 claims. The Court also dismissed with prejudice

---

[2] Real contends that an unnamed witness sent him an affidavit indicating that he, the witness, received a dying declaration from the victim in Real's homicide case inculpating someone other than Real.

Real's § 1983 conspiracy claim against some Defendants, but otherwise permitted Real to proceed on his First Amendment retaliation and denial of access to court claims, and his § 1983 conspiracy claim as to the other Defendants.

After Real amended his complaint, on December 19, 2014, the District Court adopted a Report that recommended awarding summary judgment in favor of Defendants, dismissing his remaining claims. The Court also dismissed Real's state-law claims and his request for a declaratory judgment that he asserted in his amended complaint.[3] This timely appeal ensued.

II.

We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's dismissal under § 1915(e)(2), see Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000) (applying Rule 12(b)(6) standard), and ask whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on this face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations omitted). We also exercise plenary review over the District Court's award of summary judgment and apply the same test the District Court should have utilized – whether the record "shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009). In applying this test, we must accept evidence presented by the non-movant

_____

[3] He asserted a claim based on the Pennsylvania Constitution and a claim for intentional infliction of emotional distress.

4

as true and draw all justifiable factual inferences in his favor. Id. We may summarily affirm any decision of the District Court where "it clearly appears that no substantial question is presented or that subsequent precedent or a change in circumstances warrants such action." 3d Cir. I.O.P. 10.6 (2015).

We detect no error in the District Court's resolution of Real's claims and will affirm for substantially the same reasons as expressed by the District Court without further elaboration. His First Amendment claims warrant further discussion, however. The District Court awarded summary judgment on these claims because Real failed to exhaust administrative remedies,[4] finding that "the undisputed evidence shows that Plaintiff did not submit any timely grievance regarding his missing legal property, which he discovered on December 4, 2009, and regarding his instant constitutional claims."

DC-ADM 804, which governs grievance procedures in Pennsylvania correctional institutions, provides that "[t]he inmate must submit a grievance to the Facility Grievance Coordinator/designee within 15 working days after the event upon which the claim is based." Here, Real contends, in an unsworn declaration submitted in response to Defendants' motion for summary judgment, that he attempted to file a grievance on

---

[4] The PLRA provides, in part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement is an affirmative defense, and entry of summary judgment on such a ground is appropriate only if the moving party presents "evidence that would entitle [it] to a directed verdict if not controverted at trial." In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 331 (1986)).

December 7, 2009, related to his missing property, but was informed by the grievance coordinator on December 21, 2009, that his grievance "will not be filed or acknowledged by any grievance coordinator because the incident involves [his] criminal appeal which is a current litigation." Real also submitted, as an attachment, the grievance he allegedly filed, dated December 4, 2009, but without any indication that it was actually delivered to, or received by, prison staff.

In awarding summary judgment, the District Court determined that no credible evidence of receipt existed, and that the "Declaration is a sham affidavit insofar as Plaintiff avers that he attempted to submit his December 4, 2009, grievance . . . but was not allowed." The Court also concluded that the grievance attached to the declaration would be inadmissible hearsay at trial and did not consider it as credible evidence.[5]

We have recognized, under the sham affidavit doctrine, a trial court's "power to grant summary judgment on disputed records . . . [and] if it is clear that an affidavit is offered solely for the purpose of defeating summary judgment, it is proper for the trial judge to conclude that no reasonable jury could accord that affidavit evidentiary weight and that summary judgment is appropriate." Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 253 (3d Cir. 2007). The District Court properly applied this doctrine here.

---

[5] In his argument in support of appeal, Real contends that the grievance "is his own written statement" and thus not hearsay. The grievance is likely not hearsay, but for a different reason – it would not be offered for the truth of its contents, but for its tendency to prove that Real timely filed it. Nonetheless, this evidence is no more credible than his unsworn declaration and would be similarly insufficient to overcome Defendants' motion.

DC-ADM 804 provides that "[t]he Facility Grievance Coordinator/designee shall assign a grievance tracking number to every grievance (*even a rejected grievance*) upon receipt and enter every grievance into the Automated Inmate Grievance Tracking System." (emphasis added). No such tracking number exists here, and the District Court noted that subsequent, untimely grievances Real filed at SCI-Coal Township in 2011[6] related to the confiscation of his property were assigned tracking numbers. In addition, DC-ADM 804, itself, contains no restriction on filing grievances related to the confiscation of property during the pendency of litigation, and such a restriction belies common sense – no inmate could ever grieve the confiscation of legal property during the period when it is most needed.

Real has offered no credible evidence that he timely filed a grievance in connection with the confiscation of his property, or that officials obstructed him from doing so. He has offered instead only unsubstantiated allegations – a mere "scintilla of evidence" – insufficient to overcome a motion for summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Thus, the District Court properly concluded that he failed to exhaust his administrative remedies with respect to his First Amendment claims related to this confiscation.[7] See Woodford v. Ngo, 548 U.S. 81, 90

---

[6] Real contends that the grievance coordinator informed him in 2011 that he could grieve the confiscated property at that time. But, as with his claim regarding the grievance officer's rejection of his grievance in 2009, he offers no credible evidence to support it.

[7] In his argument in support of appeal, Real reasserts his claim that the grievance coordinator rejected his grievance because it involved a pending criminal appeal. He

(2006) ("Proper exhaustion demands compliance with an agency's deadlines and other

critical procedural rules."). We will affirm the judgment of the District Court.



then concludes that, because prison officials "obstructed him from filing a grievance before the . . . deadline . . . an issue of material fact exists as to whether the grievance procedure was available for appellant to properly exhaust." This argument overlooks that, in resolving Defendants' motion, the District Court properly determined that Real failed to put forth credible evidence of the obstruction in the first instance. Real also argued in the District Court that officials obstructed him from filing grievances by confiscating an inventory sheet of his property, which he claimed was required to be submitted in connection with grievances related to confiscated property. But as the District Court accurately observed, this requirement did not take effect until December of 2010, a year after the applicable deadline.