BLD-290                                                    **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1511
_____

SHAWN MICHAEL LEDCKE,
Appellant

v.

PENNSYLVANIA DEPARTMENT OF CORRECTIONS; LACKAWANNA COUNTY
PRISON; LACKAWANNA COUNTY PRISON BOARD; JANINE M. DONATE,
Lackawanna County Prison Warden; ROBERT MCMILLIAN, Lackawanna County
Prison Warden; JOHN SZYMANSKI, Lackawanna County Sheriff; WALTER J.
PRITCHYK, JR., Lackawanna County Prison Associate Warden Security; TIMOTHY
BETTI, Lackawanna County Prison Associate Warden; LACKAWANNA COUNTY
PRISON DISCIPLINARY HEARING GUARD; JOHN OR JANE DOE #1; JOHN OR
JANE DOE #2; DOCTOR JOHN DOE #3; NURSE BARB FOX; CORRECTIONAL
SHERIFF/OFFICERS; CAPTAIN (FNV) CHIAPELLI; LIEUTENANT (FNV)
MCGRAW; LIEUTENANT (FNV) MAVI;SERGEANT (FNV) FANNY; SERGEANT
CWALINSKI; SERGEANT BILL SHANLEY; SCOTT BLUME; MIKE MALLICK,
(FNV); TALLUTO, (FNV); (FNV) ROBINSON; SCHNIPES, (FNV)
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 1-12-cv-01580)
District Judge: Honorable Martin C. Carlson
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Under Third Circuit LAR 27.4 and I.O.P. 10.6
June 16, 2016

Before: FUENTES, KRAUSE and SCIRICA, <u>Circuit</u> <u>Judges</u>

(Opinion filed: July 6, 2016)
_____

OPINION[*]

_____

PER CURIAM

Pro se appellant Shawn Ledcke appeals from the judgment of the United States District Court for the Middle District of Pennsylvania entered following a jury trial in his 42 U.S.C. § 1983 action. As the appeal does not present a substantial question, we will summarily affirm the decision of the District Court.

I.

This § 1983 action arises from an August 9, 2010 physical confrontation between Ledcke and various correctional staff at the Lackawanna County Prison, followed by a period of detention under what Ledcke describes as harsh conditions without adequate medical care. Ledcke alleges that, on August 9, 2010, at approximately 1:00 P.M., "C.E.R.T. members noticed [him] outside his assigned cell . . . and immediately rushed [him] . . . causing fractured ribs in several locations," and numerous other injuries. He claims that various Defendants – primarily Correctional Officers Blume, Schnipes, Robinson, and Talluto – punched, kicked, and pepper sprayed him, and ultimately hog-tied him in his cell with a spit hood. He also claims that two medical defendants – Dr. Zaloga and Nurse Fox – and two supervisory officials at the prison – Captain Chiarelli and Sergeant Shanley – were present during this altercation but failed to intervene.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

Ledcke concedes that, after being released from his restraints, he received medical treatment in his cell from Nurse Barb Fox – which he contends was limited to sanitizing his wounds and providing an unspecified shot in his arm. He also claims that a John Doe doctor Defendant refused his requests to receive x-rays for possible broken bones.[1] Medical records indicate that Ledcke was brought to the medical unit on August 9, 2010 at 1:30 P.M. and treated by Dr. Zaloga, who prescribed Ativan, Tylenol, and antibiotic ointment. Medical records also reflect fifty-seven separate nursing notes documenting efforts to treat Ledcke between August 9, 2010 and August 25, 2010, but he declined care in the majority of these instances.

Ledcke claims that after receiving treatment on August 9, 2010, he was returned to his cell and double-cuffed behind his back with "bleeding wounds, no mattress . . . no sink or toilet water, and another prisoner's feces and urine smeared throughout the cell." Ledcke acknowledges that his restraints were removed about twenty-five hours after the initial incident, but claims that his continued requests for medical treatment were denied. On August 11, 2010 he was transferred to another cell and was "granted a shower, a mattress . . . serviceable bedding and clean clothes."

The next day, after he requested to be moved to a behavior watch cell, he claims that Defendants placed him in a cell that was "clearly smeared and contaminated" with various bodily fluids. He remained in this cell for six days and was not permitted to

---

[1] In his deposition, Ledcke acknowledged receiving x-rays at an unspecified time after being transferred to SCI-Talladega, and indicated that he had no knowledge of the results.

shower or otherwise access hygiene products. He was then transferred to another cell where he acknowledges receiving wound care and various unspecified medications.

The District Court screened Ledcke's complaint under 28 U.S.C. § 1915(e)(2), and on September 12, 2012, it dismissed all of his claims predicated on solely verbal harassment, in addition to all claims against: (1) the institutional Defendants; (2) the supervisory Defendants; (3) nurse Barb Fox; and (4) John Syzmanski.[2] On August 26, 2014, the District Court awarded summary judgment in favor of the remaining Defendants on all remaining claims, but permitted Ledcke to proceed to a jury trial on (1) his excessive force claims, and (2) his failure to intervene claims against correctional supervisors who were allegedly present during the August 9, 2010 physical confrontation.

On February 8, 2016, a jury trial was held before Magistrate Judge Martin Carlson, and the jury returned a verdict that same day, finding that none of the remaining Defendants used excessive force against Ledcke. Following the District Court's entry of judgment in favor of Defendants, this timely appeal ensued.

II.

We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's dismissal under § 1915(e)(2), see Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000) (applying Rule 12(b)(6) standard), and ask whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is

---

[2] Syzmanski, a sheriff's deputy, is alleged only to have made a derogatory comment toward Ledcke during an interview with FBI agents.

4

plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations omitted). We also exercise plenary review over the District Court's award of summary judgment and apply the same test the District Court should have utilized – whether the record "shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009). In applying this test, we must accept evidence presented by the non-movant as true and draw all justifiable factual inferences in his favor. Id. We may summarily affirm any judgment of the District Court where "it clearly appears that no substantial question is presented or that subsequent precedent or a change in circumstances warrants such action." 3d Cir. I.O.P. 10.6 (2015).

We detect no error in the District Court's resolution of Ledcke's claims and will affirm for substantially the same reasons as expressed by the District Court. His claims of verbal harassment fail as a matter of law. McBride v. Deer, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) ("[A]cts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment."). The District Court also properly dismissed his claims of supervisory liability because he failed to demonstrate that any of the supervisory Defendants were actually involved in the alleged unconstitutional conduct, or that they "established and maintained a policy, practice or

5

custom which directly caused [the] constitutional harm." Santiago v. Warminster Twp., 629 F.3d 121, 129 n.5 (3d Cir. 2010).[3]

As to his medical care claims, we agree with the District Court that the record "reveals that medical staff attempted to provide ongoing care to Ledcke following this incident, but were repeatedly rebuffed by Ledcke who chose for his own reasons to frequently refuse the care and treatment offered to him." Medical records reflect at least fifty-seven distinct attempts to treat Ledcke following the initial altercation – the majority of which he declined. Thus, his claims amount to "[m]ere disagreement as to the proper course of medical treatment," which is insufficient to state an Eighth Amendment claim. Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (citing Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987)); See also Norris v. Frame, 585 F.2d 1183, 1186 (3d Cir. 1978) ("Where the plaintiff has received some care, inadequacy or impropriety of the care that was given will not support an Eighth Amendment claim.").[4]

Ledcke's conditions of confinement claims are premised on (1) an approximate 24-hour period between August 9, 2010 and August 10, 2010 when he claims he was left in a filthy cell with no bedding, double-cuffed in the back, and (2) a 6-day period when

---

[3] We also note that, following the District Court's dismissal of Ledcke's supervisory liability claims, a jury determined that no unconstitutional force was employed against Ledcke. His claims of supervisory liability would also fail on that basis.

[4] To the extent that he complains about the delay in receiving x-rays, he has offered no "verif[ied] medical evidence . . . to establish the detrimental effect of [the] delay," as he must do to support a delayed treatment claim. Hill v. Dekalb Rg'l Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994) (overruled on other grounds).

he claims he was not permitted to shower or access hygiene products in a cell contaminated with various bodily fluids. Upon a review of videos depicting these conditions, the District Court determined them to be "spare [but] in no way shocking or depriv[ing] Ledcke of the minimal civilized measure of life's necessities." We agree. See Johnson v. Pelker, 891 F.2d 136, 138-39 (7th Cir. 1989) (no Eighth Amendment violation where prisoner slept on a "slab of metal" for two and one-half days); Howard v. Adkison, 887 F.2d 134, 137 (8th Cir. 1989) (deprivation of hygiene products implicates the Eighth Amendment only "over a lengthy course of time"). After our independent review of the available video evidence depicting Ledcke's living conditions between August 9, 2010 and August 18, 2010, we conclude that no evidence exists to support his claims that he was handcuffed in the back for any extended period of time, or that he was placed in any cells containing potentially hazardous substances.

Turning to his excessive force and failure to intervene claims, the jury determined that none of the Defendants involved in the initial altercation "violated his rights under the Eighth Amendment by using force against him maliciously, for the purpose of causing harm."[5] Because no unconstitutional force was employed against Ledcke, no liability can exist for failing to intervene in its application. See Smith v. Mensinger, 293

---

[5] In his argument in support of appeal, Ledcke contends that this finding was "contrary to the evidence." But because he has filed no post-verdict motions, and appeals directly from the judgment entered according to the jury's verdict, our ability to review the sufficiency of the evidence is curtailed, and our actions are limited to affirmance or remand for a new trial upon showing of prejudicial legal error. See Unitherm Food Sys. v. Swift-Eckrich, Inc., 546 U.S. 394, 400-01 (2006). He has alleged no such error.

F.3d 641, 650 (3d Cir. 2002) (duty to intervene extends only to "constitutional violation such as an unprovoked beating").

Accordingly, we will affirm the judgment of the District Court.