**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 18-2402

———————————

LEONARD CAPRA,

Appellant

v.

OFFICER JOHN KNAPP; DETECTIVE ALEXANDER LOPEZ-ARENAS;
OFFICER VINCENT SURACE; CITY OF HACKENSACK; COUNTY OF BERGEN;
JOHN DOES 1-10; ABC PUBLIC ENTITIES,
(being fictitious names of as yet unidentified parties)

———————————

On Appeal from the United States District Court
for the District of New Jersey
(D. C. Civil Action No. No. 2-15-cv-03215)
District Judge: Honorable William J. Martini

———————————

Submitted under Third Circuit LAR 34.1(a)
On March 11, 2019

Before: MCKEE, PORTER and ROTH, <u>Circuit Judges</u>

(Opinion filed: October 9, 2019)

———————————

OPINION *

———————————

———————————

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

ROTH, Circuit Judge:

Leonard Capra brought this action against three police officers and the two municipalities that employed them alleging that the officers violated his Fourth Amendment rights at a New Jersey police station. The District Court granted summary judgment in favor of all defendants, holding that the officers had acted reasonably and thus were protected by qualified immunity. The court also held that the municipalities could not be held liable because the claims against the officers failed. Crediting all inferences in favor of Capra, as we must, there are genuine issues of material fact precluding summary judgment. Thus, we will reverse the District Court's judgment in part and remand for further proceedings.

I[1]

In early 2014, Capra was arrested for selling a controlled substance. Three police officers, John Knapp and Alex Lopez-Arenas with the Hackensack Police Department, and Vincent Surace with the Bergen County Sheriff's Office, transported Capra to the Hackensack Police Station. After they arrived at the station, the officers escorted Capra to a processing room to complete paperwork and search him before putting him in a cell.

The parties dispute what occurred in the processing room. According to Capra, the officers grabbed him by his arms, pulled him to his feet, and threw him to the ground. After he was on the ground, Capra claims that one of the officers intentionally kicked him

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's decision to grant summary judgment, applying the same standard as the District Court. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288-89 (3d Cir. 2018).

in the face twice. He alleges that he did nothing to provoke the officers and was not resisting arrest.

The officers tell a different story. They state that Capra repeatedly swore at them, and that, when Knapp and Lopez approached him to remove any prohibited items, Capra stood up and started moving his arms and walking quickly towards the door as if to leave the room. They claim that in an attempt to restrain him, they were thrown off-balance and fell to the floor. Lopez contends that Capra was still combative so Lopez held him down while the other officers attempted to subdue him. The officers deny kicking him while he was on the ground. After the scuffle ended, the officers called an ambulance to take Capra to the hospital, where he was treated for a left elbow fracture. The nurse practitioner at the hospital reported that Capra had bruises on his forehead and lip.

A security camera captured the events in the processing room but not the events in the hallway, where Capra alleges he was kicked in the face. The video has a low frame rate and does not have audio. It shows the officers lifting Capra out of his chair and the four of them falling to the ground. It is not clear whether Capra was acting aggressively and trying to escape the officers' grip or whether the officers threw him to the ground without provocation.

Capra brought claims against Officers Lopez, Knapp, and Surace under 42 U.S.C. § 1983 and New Jersey state law, alleging that their actions constituted excessive force in violation of the Fourth Amendment as well as battery. Capra also sued the City of Hackensack and the County of Bergen, claiming that their inadequate training and supervision caused his injuries. The District Court granted the defendants' summary

3

judgment motions, holding that the officers' use of force was objectively reasonable and that they were entitled to qualified immunity. Capra appealed.

## II

The officers violated Capra's Fourth Amendment rights if their conduct was objectively unreasonable.[2] In determining the reasonableness of the officers' actions, we pay "careful attention to the facts and circumstances of [this] case, including the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight."[3] Even if the officers' actions violated Capra's constitutional rights, they are shielded from liability if that right was not clearly established at the time pursuant to the doctrine of qualified immunity.[4]

There are simply too many disputed material facts to conclude whether the officers' conduct in the processing room was reasonable. The parties have contradictory accounts of what happened, and the video does not decisively confirm or refute either party's account.[5] On the record before us, a jury could find that Capra was not an immediate threat, resisting arrest, or attempting to escape the room, and could thus conclude that the officers violently threw him to the floor for no reason. Or, the jury

---

[2] *Graham v. Connor*, 490 U.S. 386, 388 (1989).

[3] *Id.* at 396.

[4] *See Curley v. Klem*, 499 F.3d 199, 206-07 (3d Cir. 2007).

[5] We credit inferences in the non-moving party's favor unless video evidence of the material events "quite clearly contradict[] the version of the story" told by the non-movant. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Because the video does not contradict Capra's version of the events, we draw all inferences in his favor.

4

could conclude that Capra was trying to evade the officers and that Capra's momentum caused them to fall to the floor. Under the *Graham* factors, the reasonableness of the officers' actions depends on which version of events the jury finds more credible.[6] Thus, we hold that there are questions of material fact precluding summary judgment as to the officers' use of force inside the processing room.[7]

As to the events in the hallway, beyond the view of the camera, the officers argue that, even if they kicked Capra in the head, his claim still fails because Capra cannot produce evidence to identify which officer kicked him, and therefore he cannot show a genuine dispute of material fact to defeat summary judgment.[8] We disagree. Construing the record in Capra's favor, we conclude that a reasonable jury could identify Surace as the officer who kicked him. First, Capra alleged that "one of the big Officers" kicked him and testified that Knapp is not "one of the big guys."[9] That leaves Lopez and Surace. Then, Capra stated that he was kicked within the first minute or so after he hit the floor, and Lopez is visible in the video footage during that time. Finally, Capra alleged that he was kicked in the face while looking to the right, which is where Surace was positioned

---

[6] These disputed material facts also preclude a conclusion on the qualified immunity question because whether an officer should have known that the level of force was reasonable depends on "the potential threat posed by the suspect, [and] whether the suspect was resisting arrest, armed, or attempting to flee." *Couden v. Duffy*, 446 F.3d 483, 497 (3d Cir. 2006).

[7] Judge Porter would affirm the grant of summary judgment regarding the events inside the processing room based on the video, which he views as clearly contradicting Capra's version of events. *See Scott*, 550 U.S. at 380-81.

[8] *Jutrowski*, 904 F.3d at 291 ("[I]n the face of a motion for summary judgment, a § 1983 plaintiff must produce evidence supporting *each individual defendant's personal involvement* in the alleged violation to bring that defendant to trial." (emphasis added)).

[9] DA16.

5

after the parties tumbled into the hallway. These allegations are sufficient for a "reasonable jury to identify which, if any, of the [defendants] used excessive force."[10] Because Capra's allegations leave Surace as the only officer in the hallway who could have kicked him, Lopez and Knapp did not violate Capra's constitutional rights while outside the processing room.

In sum, we will reverse the District Court's grant of summary judgment for all the officers regarding the events inside the processing room and regarding Surace's actions outside the processing room, and we will affirm the District Court grant of summary judgment to Lopez and Knapp concerning their actions outside the processing room.[11]

### III

We now turn to Capra's claims against the City of Hackensack and Bergen County. Capra can succeed on his municipal liability claims only if he can show that Bergen and Hackensack have a "policy" or "custom" that proximately caused his injury.[12] As to Bergen, Capra alleges the county had a custom of relaxed reporting and did not adequately train its officers. There is insufficient evidence in the record to

---

[10] *Jutrowski*, 904 F.3d at 292-93. If the jury concludes that Surace did in fact kick Capra in the face, Surace would not be entitled to qualified immunity. We have "established that an officer may not kick or otherwise use gratuitous force against an inmate who has been subdued." *Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir. 2009).

[11] Capra's state-law tort claims rise and fall with his § 1983 claims. *See* N.J. Stat. § 59:2–10; *Wildoner v. Borough of Ramsey*, 744 A.2d 1146, 1153 (N.J. 2000) ("The same standard of objective reasonableness that applies in Section 1983 actions also governs questions of good faith arising under the Tort Claims Act[.]"). Thus, we will reverse the District Court's grant of summary judgment on those claims as to all officers inside the processing room and as to Surace outside the processing room.

[12] *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)).

support these allegations. The record shows that Surace filed a use of force report and an incident report. It also shows that Surace was trained in the use of force at the police academy and received yearly refresher courses.

As for Hackensack, Capra claims that the police department's high-ranking officials condoned the use of excessive force by failing to address violations of their use of force policy through internal affairs investigations. However, there is no evidence that Hackensack police officers frequently used excessive force or that when they did, Hackensack failed to investigate such behavior.[13]

Thus, the record does not show that a policy or custom adopted by Bergen or Hackensack caused Capra's alleged injuries. Capra's speculation to the contrary is not enough to support a claim for municipal liability. We will affirm the District Court's grant of summary judgment for Bergen County and the City of Hackensack.

IV

For these reasons, we will reverse the District Court's judgment in part, affirm it in part, and remand for further proceedings consistent with this opinion.

---

[13] Although Lopez has drafted approximately twenty Use of Force Reports throughout his career, Capra has not shown that these reports involved excessive force. Moreover, Lopez testified that he had in fact been investigated by internal affairs.